CASE 75—ACTION BY JOHN T. UNDERHILL AGAINST WALTER MUR-
PHY AND OTHERS FOR A STRIKE INJUNCTION.—FEB. 12.

# Underhill v. Murphy, &c.

### APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

STRIKE INJUNCTION—BUSINESS AS PROPERTY—PUNISHING CONTEMPT
—TRENCHING ON DOMAIN OF CRIMINAL LAW—BONDS TO KEEP
PEACE—ADEQUATE REMEDY.

Held: 1. The right to carry on a business and to fulfill contracts
made in the course thereof is a property right, falling within the
constitutional guaranty of the right to acquire and protect prop-
erty, which injunction may issue to protect.

2. The Constitution guaranties the right to acquire and protect prop-
erty. Kentucky Statutes, 1903, section 1291, provides that a
court shall not impose for contempt more than thirty dollars
as a fine, or imprisonment for more than thirty hours, with-
out the intervention of a jury. HELD, that a strike injunction
to protect plaintiff's business and prevent violence toward and
intimidation of his employes could not be denied on the theory
that defendants' acts were of a criminal nature, and that to
punish them as contempts would amount to an assumption of
criminal jurisdiction to be exercised without the intervention
of a jury.

3. A strike injunction to protect plaintiff's business and prevent
violence toward and intimidation of his employes can not be
refused on the ground that Cr. Code Prac., sections 383-392,
furnishes an adequate remedy by providing for the prevention
of offenses by requiring persons to give security to keep the
peace and be of good behavior, the proceedings to be begun by
warrant issued in the name of the Commonwealth, and so pros-
ecuted, and the bond running to the Commonwealth.

ORLANDO P. SCHMIDT, ATTORNEY FOR APPELANT.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. The combination entered into for the purpose of inflict-
ing injury upon the appellant was and is illegal. The acts

Underhill v. Murphy, &c.

done in furtherance of such illegal purposes take character from that purpose. The law which allows working men to combine for the purpose of obtaining a lawful benefit to themselves, does not sanction combinations which have for their immediate purpose the injury of another. Vegelahn v. Guntner, 177 Mass., 92; Plant v. Woods, 176 Mass., 492; Moran v. Dumphy, 177 Mass., 485; O'Neil v. Dehanna, 182 Pa., 236; Flaccus v. Smith, 199 Pa. St., 128; Coons v. Christy, 53 N. Y. Sup., 668; Curram v. Galin, 152 N. Y., 33; Bar v. Essex Trades Council, 53 N. J. Eq., 101; Frank v. Herold, 52 Atl., 152; Jersey Printing Co. v. Cassidy, 53 Atl., 229; London Guarantee & Accident Co. v. Horn, 101 Ill. App., 355; Arthur v. Oakes, 63 Fed., 310; Hopkins v. Oxley Stave Co., 83 Fed. Rep., 912; United States v. Haggerty, 106 Fed., 510; Lasher v. Little, 202 Ill., 555.

2. A suit in equity may be maintained to prevent the persons concerned in such an illegal combination from carrying the same into effect, when the damages would be irreparable, or when such a proceeding is necessary to prevent a multiplicity of suits, citing 3 Pomeroy Eq. Juris., secs. 1338, 1346, 1357; Hopkins v. Oxley Stave Co., 83 Fed., 310; Bar v. Essex Trades Council, 53 N. J. Eq., 101; Flaccus v. Smith, 199 Pa., 128; Frank v. Herold, 52 Atl., 152.

3. The acts complained of must be considered in connection with the unlawful purpose for which they are being committed. They became unlawful when done for the purpose as alleged in the pleadings.

(1) Interfering with and obstructing appellant's place of business. Frank v. Herold, 52 Atl., 152; Jersey Printing Co. v. Cassidy, 53 Atl., 229; Bar v. Essex Trades Council, 53 N. J. Eq., 101.

(2) Threats, intimidation, violence and so-called "persuasion." In re Debs, 158 United States, 654; Frank v. Herold, 52 Atl., 152; Ex parte Richards, 117 Fed. Rep., 658; Union Pac. Ry. Co. v. Ruff, 120 Fed. Rep; Jersey Printing Co. v. Cassidy, 53 Arl., 230; Beattie v. Callanan, 81 N. Y. Sup., 413; Plant v. Woods, 176 Mass., 492; Moran v. Dumphy, 177 Mass., 485; O'Neil v. Dehanna, 182 Pa., 236; Flaccus v. Smith, 199 Pa., 128; Bar v. Essex Trades Council, 53 N. J. Eq., 101.

(3) Picketing and patroling for the purpose of interfering with appellant's business. Vegelahn v. Guntner, 177 Mass., 92; Jersey Printing Co. v. Cassidy, 53 Atl., 229; Frank v. Herold, 52 Atl., 152; Union Pacific Ry. Co. v. Ruff, 120 Fed. Rep., 102; Beaton v. Tarrant, 102 Ill. App., 124; Cour d'Alane Mining Co. v. Miner's Union, 51 Fed., 26; United States v. Cane, 23 Fed., 248; Bech v. Railway Teamsters' Union, 18 Mich., 497.

4. The fact that the acts committed by the appellees consti-
tuted criminal offenses does not deprive a court of equity of
jurisdiction to enjoin such act, where their continuance will
result in irreparable injury to property rights. *In re* Debs, 158,
United States, 654. Jacob Christensen v. Kellog Switchboard
& Supply Co., Vegelahn v. Guntner, 177 Mas., 92; Chalmers
v. Reliable Lodge, 111 Fed. Rep., 164a; Union Pac. Ry. Co.
v. Ruff, 120 Fed Rep., 102; Shoe Co. v. Saxey, 131 Mo., 213;
Cour d'Alane Mining Co. v. Miners' Union, 51 Fed. Rep., 26.

5. There is a remarkable unanimity in the decisions in the
courts of last resort all over the Union, on all the points' in-
volved in this controversy.

We base our right to relief upon irreparable injury to our
property and business rights, involving, as it does, the total. de-
struction of our business and the good will and credit and prop-
erty rights connected therewith, and under the law of the land,
as expounded in the cases above referred to and many others too
numerous to refer to, the appellant is in our opinion clearly and
unquestionably entitled to the relief prayed for.

J. L. ELLISTON, ATTORNEY FOR APPELLEES.

. 1. This is an effort on the part of the plaintiff to convert
a court of equity into a criminal court in order to punish vio-
lations of the law which are strictly of a criminal or penal na-
ture.

2. A chancellor, sitting as a court of equity, has no jurisdiction
to grant the relief asked for.

3. It is a well settled principle of law that equity will never
interfere where there is an adequate remedy at law.

4. Appellant has been operating his business all the while;
no property of his has ever been destroyed and no attempt has
been made to destroy it. His business has not been injured
and there is no proof to show any loss of business.

5. There is an absence of proof showing a conspiracy or con-
federation upon the part of appellees to destroy appellant's prop-
erty or to commit any trespass thereon.

6. This is not a government by injunction, and because a la-
borer seeks to uphold a labor union, it does not follow that he
is destroying the property of those opposed to him.

### AUTHORITIES CITED.

Vol. 16, p. 352, Am. & Eng. Ency. of Law; Ellis v. Gosney,
1 J. J. M., 348; Niesmieth v. Boler, 3 Bibb, 488; Marrs v. Fid-

dler, 24 Ky. Law Rep., 722; Albany Christian Church v. Wilborn, 23 Ky. Law Rep., 1820; Pfingst v. Senu, 94 Ky., 556; High on Injunction, sec. 742; 158 U. S., 593, Debs' Case; Neaf v. Parmer, 103 Ky., 496; Caille v. Haager, 20 Ky. Law Rep., 1889; Com. v. McGovern, Ky. Law Rep., Sept. 15, 1903, p. 411, vol. 25; Am. & Eng. Ency of Law, vol. 16, p. 352; Ellis v. Gosney, 1 J. J. Mar., 348; Niesmieth v. Boler, 3 Bibb, 488; Vegelahn v. Guntner, &c., 44 N. E. Rep., 1077; Walker v. Cronan, 107 Mass., 555.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellant, John T. Underhill, is a plumber engaged in business in Covington, Ky., taking contracts in plumbing, and has in his employ journeymen plumbers. He has followed the occupation for a number of years, and has built up a large and lucrative business in Covington and adjoining cities, which is of great pecuniary value to him. He had on hand a number of important contracts in plumbing, including the contract for the plumbing in the new courthouse in Covington. The appellees, with the exception of Horgan, had been employed by Underhill in his plumbing business, working for wages. The appellees were members of a union organized for the protection of labor. A difference arose between Underhill and his workmen, who were members of the union, in reference to its relations with employers, and they then quit his employment. About this time a general strike occurred among those employed by master plumbers in Covington. In order to carry out his contracts when his employes left him, Underhill employed nonunion men to work in place of the union men who had quit. The appellees thereupon undertook to prevent the nonunion men from working by following them from place to place about the city, assembling about Underhill's shop, denouncing and threatening Underhill and his workmen. This continued for several weeks, and Underhill filed suit asking an injunction

restraining the unlawful acts of the defendants. He alleged that he depended upon his business for a livelihood; that for three weeks continuously next prior to the institution of the action, the appellees in pursuance of a conspiracy to break up his business, had collected together daily near and in sight of his place of business, where they could observe every one going into or coming out of it, and by threats, intimidation, force and violence attempted to compel his employes to quit his service; that they followed him and his employes to the places in the city where they were engaged at work carrying out contracts previously made by him, and there insulted them with opprobrious epithets, threatened them with violence, and assaulted them, so that on several occasions he had been compelled to call in the police force of the city to escort them away from the place, and protect them from the violence of the appellees; that the defendants threatened to assault and beat him and his employes, to prevent any one from working for him, to prevent his customers from coming to or employing him, to destroy his good will, and to break up his business; and that all of these unlawful acts had continued from day to day and from hour to hour, in pursuance of the conspiracy formed between appellees; that the appellees were insolvent and had no property subject to execution out of which the damages sustained by him might be made, and that, unless restrained by the court, they would proceed to carry out their threats, and completely break up his business and destroy its good will. Proof was heard on a motion for an injunction, which fully sustained the allegations of the petition. In fact, the proof is perhaps stronger than the pleading. It shows that the appellees not only picketed plaintiff's place of business, but that, to protect his employes from violence, he had to take them to and from the places where they worked in a conveyance, and

that they had to enter his place of business through the alley and back door and over rear fences; and even then one of them was waylaid and beaten by three of the appellees.

The proof shows a determined effort by conspiracy on the part of the defendants to break up and destroy the plaintiff's business by force and violence unless he acceded to the demands of the union to which they belonged. At the conclusion of the evidence the court sustained a demurrer to the petition, and overruled the motion to grant the injunction. The plaintiff declining to plead further, the action was dismissed.

When a man has, by years of toil and fair dealing with his customers, built up a valuable business and good will, he is as much entitled to protection by the law in this species of property as in the home that shelters him, or the coat that protects him from the winter's cold. The right of the plaintiff to carry on his business and to carry out the contracts which he had made was a valuable property right, and no less intrinsically property than if the same amount of money had been invested in a stock of merchandise or a city lot. If the defendants had conspired together by force and violence to burn up the merchandise, or to carry off the surface of the lot, upon elementary principles, the chancellor would protect the plaintiff from the destruction of his property. The acts of the defendant as truly destroyed the plaintiff's property when they broke up his business by force and intimidation as they would have done in the case of visible property by burning it or carrying it off. Among the inalienable rights which by the first section of the State Constitution are guarantied as inherent in all men is "the right of acquiring and protecting property." The right to acquire and protect property is as sacred in the case of intangible property as tangible, and an injunction may be granted

to protect intangible rights no less than those that are
tangible.

The learned circuit judge refused to interfere on the ground
that the acts committed by the defendants are criminal in
nature, and punishable by the police department; that, if
he had jurisdiction to enjoin the commission of the acts, it
necessarily followed that he had jurisdiction to enforce a
penalty for a violation of his order; and that this would
amount, in substance, to holding that he could try and con-
vict the defendants for a criminal act without the interven-
tion of a jury. We can not concur in this reasoning. If
the defendants were undermining the plaintiff's house, or
about to slide it with his family in it out into the Ohio river,
an injunction would not be refused on the idea that, if they
thus drowned any of the people in the house, they might be
punished for murder, or, if they destroyed the house only,
they might be indicted under the statute for the willful de-
struction of private property. The reason is plain: the pun-
ishment of the defendants for murder or for the destructon of
the house, while it would vindicate the majesty of the law,
would not help the plaintiff in any way. To relegate him
to the processes of the criminal law is to allow his property
to be destroyed, and to give him no remedy therefor but
the satisfaction of seeing the wrongdoers punished. The in-
herent and inalienable right of acquiring and protecting prop-
erty which is guarantied by the Constitution means nothing
if it means only this. If a man must stand by and see his
property destroyed, and has no remedy but the slow process
of the criminal law, which only punishes the offender, but
restores nothing to him, then the constitutional guaranty
of the enjoyment of life, liberty, and property under the
law is a meaningless generality. If, in this case, the defend-
ants are fined in the police court, this will not restore to the

plaintiff the loss he has sustained by reason of the inter-
ruption of his business and his consequent inability to carry
out his contracts. When his customers are driven away,
and the good will of his business is destroyed, it will be too
late, so far as he is concerned, for the punishment of the
appellees by the criminal law to re-establish his ruined busi-
ness, or even prevent future loss. If the circuit court had
granted the injunction, and the defendants had disobeyed it,
and he had punished them for contempt, the punishment
would have been for their disobedience of the order of the
court, regardless of whether their acts were also a violation
of the criminal law of the land for which they might be in-
dicted and punished in the criminal court. His judgment
punishing them for contempt would have been no bar to the
criminal proceeding against them for their violation of the
law, and would not have affected this proceeding in any way.
His judgment would have established nothing more than
that they were guilty of contempt of court in disobeying his
orders. Whether they were also guilty of a criminal offense
would have to be tried in the proper forum, and not in this
action. The power of a court to punish for contempt is as
old as the common law, and inherent in every court. The
punishment for contempt would relate only to acts done
after the injunction was granted, in disobedience of it; and
even in this proceeding the defendants are protected as to
a jury trial by section 1291, Ky. St., 1903, which provides:
"A court shall not for contempt impose upon the offender
a fine exceeding thirty dollars ($30.00), or imprison him
exceeding thirty hours, without the intervention of a jury."

It is also urged that the plaintiff had an adequate remedy
under the Criminal Code by having the defendants to give
security to keep the peace and be of good behavior. Cr.
Code Prac. section 382. The rule that an injunction will

not be granted where there is an adequate remedy at law refers to legal remedies, and not to criminal proceedings. In no case has it ever been otherwise applied, so far as we can find. The proceeding to require security to keep the peace is given in the Code under title 10, which embraces proceedings to prevent the commission of offenses. It looks to the prevention of offenses, and not to the redress of private wrongs. It is begun by a warrant issued in the name of the Commonwealth, and is a prosecution by the Commonwealth, under the control of its officers. If a bond is required, it is taken to the commonwealth. Cr. Code Prac. sections 383-392. When the plaintiff's property is about to be destroyed, he is entitled to a remedy in his own name, and which he can himself control to protect him in the enjoyment of his own. The fact that the Commonwealth might also take out a proceeding to require the defendant to give security for good behavior is immaterial, for both proceedings may be prosecuted at the same time—one in the criminal court by the Commonwealth, and the other in equity by the plaintiff; one to prevent the commission of offenses, the other to preserve the plaintiff's property from destruction. Were the rule otherwise, an injunction could never be granted in the case of repeated trespasses, for in such cases the defendants might be put under bond for good behavior under the Criminal Code. But it has been uniformly held by this court that in such cases an injunction will lie. Preston v. Preston, 85 Ky., 16, 8 R., 633, 2 S. W., 501; Ellis v. Wren, 84 Ky., 254, 8 R., 285, 1 S. W., 440; Walker v. Leslie, 90 Ky., 842, 12 R., 581, 14 S. W., 682. The rule is universal. High on Injunctions, section 702.

The question before us has often arisen, and the decisions uniformly, so far as we can find, uphold the power of the chancellor to interfere by injunction in cases of this character.

The subject was exhaustively considered by the United States Supreme Court in re Debs, 158 U. S., 564, 15 Sup. Ct., 900, 39 L. Ed., 1092, where the court thus stated its conclusion: "Something more than the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive powers of the court. There must be some interferences, actual or threatened, with property or rights of a pecuniary nature. But when such interferences appear the jurisdiction of a court of equity arises, and is not destroyed by the fact that they are accompanied by, or are themselves, violations of the criminal law."

In Vegelahn v. Guntner, 167 Mass., 92, 44 N. E., 1077, 35 L. R. A., 722, 57 Am. St. Rep., 443—a case very much like this—the court, in answer to the objections made here, said: "Nor does the fact the defendants' acts might subject them to an indictment prevent a court of equity from issuing an injunction. It is true that ordinarily a court of equity will decline to issue an injunction to restrain the commission of a crime; but a continuing injury to property or business may be enjoined, although it may also be punishable as a nuisance or other crime." So, in Barr v. Essex Trades Council, 53 N. J. Eq., 101, 30 Atl. 881, which was also a case very like this, the court, upholding the jurisdiction of the chancellor, said the cases were all against the defendant's contention. In Beck v. Teamsters' Protective Union, 118 Mich., 518, 77 N. W., 21, 42 L. R. A., 407, 74 Am. S. Rep., 421, which was also a similar case, the Supreme Court of Michigan said, "While some writers have doubted the remedy by injunction, it is now settled beyond dispute." To the same effect, see O'Neal v. Behanna, 182 Pa., 237, 37 Atl., 843, 38 L. R. A., 382, 61 Am. St. Rep., 702; Flaccus v. Smith, 199 Pa., 128, 48 Atl., 894, 54 L. R. A., 640, 85 Am. St. Rep., 779; Shoe Company v. Saxey, 131 Mo., 212,

32 S. W., 1006; Plant v. Woods, 176 Mass., 492, 57 N. E., 1011, 51 L. R. A., 339, 79 Am. St. Rep., 330; Jackson v. Stanfield, 137 Ind., 592, 36 N. E., 345, 37 N. E., 14, 23 L. R. A., 588; Mobile v. L. & N. R. R. Co., 84 Ala., 115, 4 South., 106, 5 Am. St. Rep., 342; High on Injunctions, sections 20, 745, 752, 770, The constitutional right of free speech may not be infringed. Peaceful persuasions or lawful appeals to reason or sentiment may not be interfered with. But when intimidation and violence are resorted to, and thereby property is destroyed, or its safety imperiled, the chancellor may properly, by injunction, protect the owner of the property in the enjoyment of his constitutional right that his property shall not be taken from him. The enforcement of the criminal law is for the criminal court, but where the breach of the criminal law is also a violation of a property right the chancellor may interpose by injunction to protect property.

The judgment appealed from is reversed, and the cause is remanded, with directions to overrule the demurrer to the petition and grant the temporary injunction as herein indicated.

Judges Paynter and Nunn dissent.