## Commonwealth v. Morton, et al.

(Decided November 16, 1910.)

### Appeal from Boone Circuit Court.

1. Threatening Letters.—Under section 1241a of the Kentucky Statutes, making it unlawful for any person to send, circulate, exhibit, or put up any threatening notice or letter, signed with such person's own or another's name, or anonymously, it is an offense for two or more persons to write a letter, signed anonymously, ordering the person to whom it was addressed to "get out of Warsaw and stay out." Any letter that is calculated to and does intimidate, alarm, disturb, or injure another person, if written by persons banded together for the purpose of intimidating, alarming, disturbing or injuring such person, is an offense under the statute.

2. Threatening Letters.—Any letter or writing that is calculated to alarm, disturb, intimidate or injure, without reference to whether it designates, describes or mentions any offense that has been committed by the person referred to, or contains any statement showing why it was written or posted, is a threatening letter in the meaning of the statute.

3.  Sufficiency of Indictment.—It is not necessary that the indictment should charge that any special object or purpose was intended to be accomplished in writing the letter, or essential to its validity or the maintenance of the prosecution that the Commonwealth should either allege or prove that the persons who wrote it had any particular reason for so doing; but the letter should be incorporated in the indictment subject to certain exceptions.

4.  Right of Citizen to Quiet Enjoyment.—The right to live in peace and quiet and pursue according to his own inclinations such lawful employments as he pleases, is one of the highest privileges of the citizen, and with this privilege no man or set of men have the right to interfere.

5.  Jurisdiction of Offense.—When such a letter is written and placed in the postoffice in one county, and addressed to and received by the person threatened, at his postoffice in another county the courts of both counties have jurisdiction of the offense, as it is a violation of the statute to send such a letter or to circulate, exhibit or post it.

6.  Construction of Statutes.—Section 1146a, of the Kentucky Statutes, and sections 21 and 24 of the Criminal Code, should be read together in determining the jurisdiction of courts relating to offenses that are committed partly in one county and partly in another, or when it is a matter of doubt in which of two or more counties the offense was committed.

JAMES BREATHITT, Attorney General, and THEO. B. BLAKEY, Asst. Attorney General, for appellant.

JOHN S. GAUNT, CLORE, DICKERSON & CLAYTON for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The indictment, to which a general demurrer was sustained, charged O. P. Morton and Nora Morton with the offense of unlawfully confederating and banding themselves together for the purpose of intimidating, disturbing, alarming or injuring John L. Vest, by writing and placing in the postoffice at Warsaw in Gallatin county, Kentucky, a letter properly stamped and addressed to John L. Vest at Walton, in Boone county, Kentucky, at which place it was received by him. The letter, which was delivered to Vest by the postmaster at Walton, reads as follows:
"Vest—
"Get out of Warsaw and stay out.
                              "PANTS & COAT.

                                 "B. H."

The indictment was found under subsection 6 of section 1241a of the Kentucky Statutes, reading:

"If any person shall send, circulate, exhibit or put up any threatening notice or letter, signed with such person's own or another's name or anonymously, he shall upon conviction thereof be fined not less than one hundred dollars nor more than five hundred dollars and imprisoned in the county jail not less than three nor more than twelve months."

It is insisted by counsel for the appellees that the ruling of the lower court was correct for two reasons, first, because the letter did not violate the statute, and second, if it did, the venue of the action was in Gallatin county and not in Boone county.

In Commonwealth v. Patrick, 127 Ky. 473, which was a prosecution for sending a letter in violation of the statute supra, we said that:

"To sustain a prosecution for sending or circulating such letters they must pertain to one or the other acts which are denounced by the statute, viz.: The banding together of persons for the purpose of intimidating, alarming, disturbing or injuring any person, or to rescue a prisoner charged with a public offense, or to prevent the lawful prosecution of such prisoner, or an unlawful confederation for the purpose of injuring property of another; and unless the threatening letter has reference to or bears upon such unlawful banding or confederation for one of the purposes denounced by the statute, it does not fall under subsection 6 of section 1241a."

And it was further said that the letter or its substance should have been set out in the indictment, so that the defendant might have prepared herself to meet the exact accusation at her trial. And so, it is necessary that an indictment under this statute should charge that the threatening letter or writing was sent, circulating, exhibited, or put up by persons who had confederated and banded together for the purpose of intimidating, disturbing, alarming and injuring the person mentioned or referred to in the letter or writing, and that the letter or writing should be incorporated in the indictment, unless it has been lost or destroyed or is in the possession of the accused or contains matter too obscene or filthy to be perpetuated as a part of the records of the court. Kinnaird v. Commonwealth, 134 Ky., 575. As the indictment fully satisfies all these requirements, it stated in this particular facts sufficient to constitute an of-

fense if the letter incorporated in the indictment was of such a character as to threaten, intimidate, disturb or injure Vest. It was not necessary that the indictment should charge that any special object or purpose was intended to be accomplished in writing the letter, or essential to its validity or the maintenance of the prosecution that the Commonwealth should either allege or prove that the persons who under the circumstances stated wrote the letter had any particular reason for so doing. The statute includes any letter or writing that is calculated to alarm, disturb, intimidate or injure, without reference to whether it designates, describes or mentions any offense that has been committed by the person referred to or contains any statement showing why it was written or posted. Nor is it important what form of expression is used, if in fact it contains matter that violates the statute, and is written as a result or part of a conspiracy, confederating or banding together for the purpose of intimidating, alarming, disturbing or injuring another person, and is of such a character as that it will accomplish either one of these purposes. Nor is it essential that the person concerning whom the letter or notice is written should either read, receive or see it, if in fact it was sent, circulated, exhibited or put up. The object of the statute was to prevent evil-minded, mischievous, reckless or malicious persons from intimidating, alarming, disturbing or injuring others. And it should be given such a construction as will accomplish the purpose of its enactment, which was to promote and preserve the peace, quiet and good order of the State and protect its citizens from being harrassed, annoyed and disturbed by letters or writings of this character. The right to live in peace and quiet and pursue according to his own inclinations such lawful employments as he pleases is one of the highest privileges of the citizen. It is one of the inalienable rights guaranteed to him by the Constitution that no man or set of men can abridge or deny. Every citizen of the Commonwealth is entitled to be protected in the peaceable enjoyment of any legitimate business or occupation he is following. He has a right to pursue his vocation or employment without molestation or threat or violence, and the right to take up his abode in any portion of the State that suits his pleasure, convenience or interest. No person or persons have the right to undertake to compel him by threat or intimidation to leave

his home or abandon his business or calling, or to alarm or disturb him in the quiet possession of either. The law furnishes ample means by and through which persons who are transgressing its mandates either in their course of conduct or business may be punished or compelled to abandon the course of conduct or business that is in violation of law. And if it comes to pass that any person is so conducting himself as to make his behavior offensive to decency and good morals, or is carrying on a business that is prohibited by statute, any good citizen of the community can easily set in motion the machinery of the law, and through its agency compel the offender to reform his habits and abandon his illigitimate calling, and in this orderly way protect the community from his evil association and vicious influence. But the right of citizens, however well meaning their intention may be, to take the law into their own hands and administer it according to their own notion, has no place in our form of government, and it is well for the safety of life and the security of property that it has not. It would be a deplorable as well as intolerable condition of affairs if any men or set of men should be permitted or authorized to usurp the functions of the law and undertake according to their own lawless pleasure and will to inflict punishment or by threat or intimidation drive people away from their homes or places of business or by violence or force control or regulate their pursuits. Why the Mortons desired Vest to get out of Warsaw and stay out, the indictment does not disclose, nor was it necessary that it should. He had the right to live and remain there until removed by lawful process of some kind, and the Mortons had no authority in law to order him to get out of Warsaw and stay out. In directing him to do so, and in writing and sending the anonymous letter indicated, that had the sign or figure intended to represent the Black Hand, they were guilty of sending and circulating a letter or writing that was calculated to intimidate, alarm and disturb Vest. That it was not a friendly letter or written from motives of kindness or to protect Vest from some anticipated injury if he remained in Warsaw, is manifest. Counsel suggest that the letter might have been written by a friend of Vest and for a friendly purpose, but if so it is difficult to understand why it was found necessary to send the letter anonymously and to inscribe on it a figure or sign that the general

public have associated with an organization or society that is supposed to be guilty of many offenses and crimes against the law. It is true that the letter itself does not show that there is a lawless or any organization or society known as the Black Hand, nor does it disclose that in using the letters "B. H." and the figure of the hand that this society or organization was intended to be referred to. But, when it is considered that there is and has been for many years an organization or society commonly and publicly known as the Black Hand, and that many deeds of violence and crime are attributed to it, it is fair to assume that in using these letters and this sign in the connection they were and as a part of the character of letter that was written, the writers had in mind this organization or society and used the letters "B. H." and the figure of the hand for the purpose of making more effective the fact that it was their intention to threaten, alarm and disturb Vest. But, without the letters "B. H." or the figure of the hand, the letter itself was an offense against the statute in connection with the averments of the indictment.

The next question is, was the venue of the offense in Boone or Gallatin county? As the letter was written and placed in the postoffice in Gallatin county, it was sent from that county. and as it was received and intended to be circulated and exhibited in Boone county, did not the courts of either county have jurisdiction depending upon which one of them first took it? The sections of the Criminal Code and the Kentucky Statutes applicable to this question are as follows:

"Criminal Code, section 21. If an offense be committed partly in one and partly in another county, or if acts and their effects constituting an offense occur in different counties, the jurisdiction is in either county."

"Criminal Code, section 24. If the jurisdiction of an offense be in two or more counties, the defendant shall be tried in the county in which he is first arrested, unless an indictment for the offense be pending in another county."

"Kentucky Statutes, section 1146. When it is a matter of doubt, in the opinion of the court, in which of two or more counties the offense was committed, the court of either in which the indictment is found shall have jurisdiction of the offense."

These statutes should be read together. Their purpose was to make it sure that a person guilty of crime

should not escape punishment merely because it was doubtful in what county the offense he was charged with was committed. It sometimes happens that crimes are of .such a nature as that they may be partly committed in one county and partly in another, or continuously in several counties, and when this is the case, the courts of each county in which the offense was in part committed or in which it was continuously committed have concurrent jurisdiction. These statutes are particularly applicable to offenses like the one we are considering. Here the wrongful act was committed partly in Gallatin and partly in Boone county. The offensive letter was sent from Gallatin county, but it was intended to be and was received, circulated and exhibited in Boone county. It is a violation of the statute to send such a letter or. to circulate, exhibit, or post it, and so we think the courts of both Gallatin and Boone counties had jurisdiction of the offense. As then under the terms of the Code and Statute both these counties had concurrent jurisdiction, it follows that the Boone circuit court had jurisdiction as the indictment was first returned in that court and county. Hargis v. Parker, 27 Ky. Law Rep. 441; Commonwealth v. Jones, 118 Ky. 889.

Wherefore, the judgment is reversed, with directions to proceed in conformity with this opinion.