### Sesler v. Commonwealth.

(Decided March 18, 1927.)

## Appeal from Christian Circuit Court.

1.   Conspiracy.—In prosecution under Ky. Statutes, section 1241a-1, for willfully and unlawfully banding together and going forth armed

for the purpose of intimidating, alarming, disturbing, or injuring another, evidence held sufficient to go to jury.

2. Witnesses.—In prosecution under Ky. Stats., section 1241a-1, for unlawfully banding together for purpose of intimidating, where one of defendants denied alleged statements made by him in placing other defendants in their several positions around the house of complaining witness, it was not error to permit state in rebuttal to prove such statements for purpose of contradicting defendant's denials.

3. Criminal Law.—Error in neglecting to instruct jury that certain testimony admitted in rebuttal was admitted only for purpose of contradicting testimony of a certain defendant held not prejudicial error in view of other evidence.

THOMAS P. COOK for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Appellant, Andrew Winters, John Winters, Horace Winters and Andrew Winters, Jr., were jointly indicted under section 1241a-1, Ky. Stats., and charged with wilfully and unlawfully banding themselves together and going forth armed for the purpose of intimidating, alarming, disturbing and injuring another, and that they did unlawfully, wilfully and feloniously confederate, agree and enter into a conspiracy with each other for the purpose of intimidating, alarming and disturbing H. B. Mosely, and, pursuant thereto, did go to Mosely's house armed and did intimidate, alarm and disturb him by their armed presence.

The appellants, other than Andrew Winters, Sr., were placed upon their joint trial and appellant and John Winters were found guilty and each sentenced to two years' imprisonment, while Horace and Andrew Winters, Jr., were acquitted.

Appellant lives at Nashville, Tennessee, but is related to some of the Winters people, and upon the occasion in question was visiting in that neighborhood. In March, 1926, Andrew Winters, Sr., had stored or hidden in the woods near his home in Christian county 600 pounds of sugar and some other material, and about the 12th or 13th of March that material was hauled away by somebody.

On Monday morning, March 15th, Andrew Winters, Sr., went to the home of H. B. Mosely, who lived in the neighborhood, and was accompanied by appellant, al-

though the latter did not go into Mosely's house, but remained nearby on the outside. Andrew Winters, Sr., however, went into the house and informed Mosely that he was looking for some stuff that had been taken from him, "some sugar and some other stuff." Mosely informed him he knew nothing about it, and Winters, Sr., told him he believed his team had hauled the stuff, and referred to some tracks. Mosely told him he might search and see if he could find it, but Winters said he did not believe Mosely got it but he believed his team had hauled it, and that his mule tracks were over there. After this conversation Winters, Sr., left the house and went out where appellant was, and after a talk with him came back and said to Mosely, "If you have got any whisky or anything around you had better get it out of the way. I have sent after the right men." Winters finally told Mosely he believed Dick Dill, another man in the neighborhood, got Mosely's team to haul the stuff with, and further said, "I am going to have my stuff if I have to burn up everything in this country and kill somebody," but modified that statement by saying he was not going to kill anybody, but he would get "the Sesler bunch" to do it.

Immediately after Winters had gone out and had the conversation with Sesler, the latter left and went towards Mannington, where Winters had a brother John and two nephews, Horace and Andrew, Jr. Sesler claims that the elder Winters sent him to get an officer, but that when he saw John Winters the latter advised him not to inform the officers but to wait a while and if his brother Andrew did not come they would go and look for him. Sesler claims that upon his way to Mannington he met Dill, who told him that he ought not to have left the elder Winters at Mosely's that he was in danger there, and Sesler claims to have imparted that information to John Winters.

After waiting an hour or two at Mannington appellant, John Winters, Horace Winters and Andrew Winters, Jr., started back to the home of Mosely. John Winters had a pistol, which was not concealed, each of the two younger Winters boys had shotguns, and, according to the evidence of the commonwealth, appellant had a rifle, although this is denied by him and the other defendants.

Dill says that after appellant left Mosely's house he told him that he had the stuff treed, and that he was

going after John and the other bunch and was going to have it if he had to set the house afire and kill him as he came out.

The four named persons, who were armed, left Mannington and walked to Mosely's home, and when they got there appellant and one of the younger Winters remained out in front of the Mosely home while John Winters and the other younger one went on. John stopped at the house, but the other Winters boy went beyond the house some 50 yards or more and remained there. So that when John went in the other three were on two sides of the house, and the commonwealth's testimony shows that they were all armed with shotguns or rifles, and John with a pistol, which was in sight when he entered the house. The evidence, however, shows that John only inquired for his brother Andrew, and when informed he was not there left and took the rest of the party with him.

However, it is apparent that in the light of what had happened that morning, both Mosely and his family were very much disturbed and alarmed when the four armed men approached their home and stationed themselves as they did. The evidence shows that when they approached the Mosely home the family was at dinner and saw them approach through the window, and that the hired hand and Mosely's son immediately loaded two guns and otherwise prepared for defense.

There is no evidence that any one of them made any threat at that time except in their movements, but in the light of the threat made by Andrew Winters, Sr., that morning, and the threat made by appellant to Dill, which the latter had communicated to the Mosely family, it is apparent that Mosely and his family were justified in being disturbed and manifestly were. Andrew Winters, Sr., had told Mosely that he had sent for the *right men,* and appellant had told Dill that they were going to have the stuff if they had to burn houses and shoot people.

The fact that appellant was sent to town, that Andrew Winters, Sr., said he had sent for the *right men,* that appellant had made the threat to Dill, and that two or three hours later appellant with his three kinsmen, and all three the kinsmen of Andrew Winters, Sr., appeared at Mosely's house armed unmistakably authorized the submission of the question of confederating and banding together for the purposes of intimidation under the statute.

Complaint is made, however, that the commonwealth was permitted in rebuttal to prove what John Winters said on the examining trial with reference to placing the other defendants in their several positions around the house of Mosely. John Winters in his evidence upon this trial had denied that he made any such statement on the examining trial, and this evidence in rebuttal was certainly competent to contradict that testimony, but the trial court neglected to instruct the jury that it was admissible only for the purpose of contradicting John Winters' testimony. Assuming for the purposes of this opinion that the court erred in not so admonishing the jury, it was not a prejudicial error. There was no contradiction in the evidence as to how the men were situated around the Mosely house, and the fact that they were placed in their several positions by John Winters made no material difference, and could not have been prejudicial.

The evidence abundantly authorized the submission of the case to the jury, and we perceive no prejudicial error.

Judgment affirmed.