### Alsbrook v. Commonwealth.

(Decided May 17, 1932.)

FOX & GORDON for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR.. Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

Mervin Alsbrook, with eighteen associates, was indicted for the crime of confederating and banding together for the purpose of intimidating, alarming, and disturbing Willie Love and Roy Love. Alsbrook was given a separate trial, convicted, and condemned to serve a sentence of eighteen months in the penitentiary. He has prosecuted an appeal, complaining that he was denied a peremptory instruction of not guilty, that incompetent. evidence was adduced against him, and that the instructions to the jury were incorrect and incomplete.

1. The statute upon which the prosecution was predicated provides:

"If any two or more persons shall confederate or band themselves together for the purpose of intimidating, alarming, disturbing or injuring any person or persons . . . they, or either of them, shall be deemed guilty of a felony, and upon conviction shall be confined in the penitentiary not less than one nor more than five years." Ky. Stats., (1930 Ed.), sec. 1241A-1.

The testimony for the commonwealth tended to show that Alsbrook and his associates were miners out on a strike, and that their former employer, the Norton Mining Company, was endeavoring to run its mines by the employment of other miners. Early one morning in March, 1930, Alsbrook and a number of the strikers, including the men indicted with him, assembled about a railroad crossing where the other miners would likely pass on the way to the mines.

Roy Love and Willie Love were proposing to work and were proceeding in an automobile from their home to the mines. As the railroad crossing was approached, the striking miners lined up across the road and one of them waved his cap as a signal for the car to stop. The car did not stop, but continued on its journey, and as it passed over the crossing a rock was thrown, which

crashed through the windshield, and struck Willie Love on the forehead. As a result of this episode the Love boys decided that it would not be safe to work. Roy Love said the crowd that intercepted them contained thirty-five or more men, and that he saw Alsbrook put his hand in his coat pocket immediately before the rock was thrown. Alsbrook was standing in the middle of the highway on the crossing, but got out of the way of the car. Willie Love told substantially the same story. He did not see who threw the rock, but it came through the windshield and hit him on the forehead, inflicting a painful injury which was dressed by a doctor. He said he was not scared, but was afraid they would be hurt if the car stopped. Herbert Love, father of the two boys mentioned, testified that the crossing where the trouble occurred was between twenty-five and forty feet from his home. As many as forty men were gathered at the crossing, and they fell back to each side as the car drove through. A sister of Roy and Willie Love, who was at her father's home, said she saw Alsbrook and several others line up on the crossing and hail the approaching car. Alsbrook put his hand in his pocket, but she did not see him take it out, or throw anything. She heard the crash of the glass in the car. She estimated that the crowd along the railroad contained thirty-five or forty men, and that six of them lined up so as to block the highway at the crossing. Mrs. Maud Love, mother of the boys, said the crowd began to gather on the railroad about 5 o'clock that morning and continued there and thereabout until the trouble occurred about 6:30. She was watching the men to see what they did. They blocked the road in front of the approaching automobile, but fell back when the car did not stop. Dr. Moore, who dressed the wounds of Willie Love, said he had several cuts with glass, and had one wound over the left eye. There was a bruised place about the wound. Lonnie Clark had started to work that morning, but was persuaded by Robert Noel, in the presence of Alsbrook, not to go to work. Six or seven men were there, and they all seemed to be in good humor. They asked him where he was going, and when he told them he intended to work, Robert Noel said: "We would rather you would not work." He saw Lynn Dawson flag the Love car with his cap, but did not see any more, as he turned away fearing the car might run over some of them. Clark said Alsbrook then passed up a spur track and said,

"Let's go get them, boys." No one offered to go with him, and he rejoined the crowd. Bailey Keith testified that some ten days or two weeks before the occasion in question he had been stopped by Alsbrook, Sisk, and several others. They asked him where he was going, and he informed them that he was going to work. They said they would rather he would refrain from working. They said nothing out of the way to him, but he did not go to work because he did not think it was safe after they had made the request that he refrain. Elmer Sisk, one of the men in the crowd, had flourished a gun and made a threat toward any one who took his job. Mrs. Love stated that Sisk was one of the men in the crowd that intercepted her sons. A son of Clark was with him and gave similar testimony.

The offense consists of the conspiracy or banding together to intimidate, alarm, and disturb, which may be deduced from circumstances showing concert of action in the pursuit of a common purpose to coerce or to compel the victims to submit to the will or wish of the conspirators. Middleton v. Com., 204 Ky. 460, 264 S. W. 1041; Asher v. Com., 211 Ky. 524, 277 S. W. 842; Sesler v. Com., 220 Ky. 128, 294 S. W. 1062; Murray v. Com., 224 Ky. 541, 6 S. W. (2d) 696; Com. v. Ward, 92 Ky. 158, 17 S. W. 283, 13 Ky. Law Rep. 422; Fulks v. Com., 237 Ky. 642, 36 S. W. (2d) 36.

The purpose of the statute is "to promote and preserve the peace, quiet, and good order of the state, and protect its citizens from being harrassed, annoyed, and disturbed." Cf. Com. v. Morton, 140 Ky. 631, 131 S. W. 506, 508, Ann. Cas. 1912B, 454.

The rule is that a case must be submitted to the jury if there is any evidence tending to prove the offense charged. Bennett v. Com., 133 Ky. 452, 118 S. W. 332; Kirk v. Com., 192 Ky. 460, 233 S. W. 1060; Kennedy v. Com., 194 Ky. 502, 239 S. W. 796.

The circumstances shown were sufficient to induce a reasonable belief that the defendant and his associates were co-operating in conduct not sanctioned by law to prevent the two Love boys from working, and the court, in such a case, could not properly direct a verdict of acquittal.

The defendant testified to facts, and produced much other evidence, tending to show that he was not guilty of any offense, but was exercising only his conceded right peaceably to assemble with friends and to persuade the other men not to work. He said he made no attempt to coerce or to compel them to refrain from work, but was in fact acting merely as a missionary to advance by argument and peaceful means the interests of his craft. The fact that the men acted together was explained on the ground that they were all in the common pursuit of the same lawful purpose to win the strike by enlisting support and sympathy. It is said that the act of some one in throwing a missile was not the result of prearrangement, but of a sudden impulse prompted by the unexpected act of the Love boy in trying to run the car over him. Cf. Fulks v. Com., 237 Ky. 642, 36 S. W. (2d) 36. The determination of the truth from the conflicting contentions was for the jury, and the court, under the evidence, was bound to leave the problem to that tribunal.

This court is not authorized to rejudge the justice of the verdict of a jury. In the absence of some error of law, or failure of the proof, a new trial cannot be ordered. The jury is the tribunal established by law to determine the quality of conduct, the credibility of witnesses, and the probative value of testimony. The result of a trial by jury, derived from the consideration of conflicting evidence, under proper instructions, must be accepted here. Brown v. Com., 226 Ky. 255, 10 S. W. (2d) 820; Perkins v. Com., 227 Ky. 129, 12 S. W. (2d) 297; Mattingly v. Com., 240 Ky. 625, 42 S. W. (2d) 874.

2. Complaint is made of the testimony of Bailey Keith as to an occurrence ten days or two weeks before the occasion in question. The evidence had a bearing on the issue of confederating and intent. Alsbrook was present on both occasions, and the transaction was of a kindred type. Sisk was one of the men jointly indicted with Alsbrook, and Keith's testimony was pertinent and admissible upon the pending issue. In conspiracy cases, the evidence is permitted to take a wide range, and the fact that it tends to show the commission of separate and distinct offenses does not necessarily render it incompetent. Gambrell v. Com., 130 Ky. 513, 113 S. W. 476; Jenkins v. Com., 167 Ky. 544, 180 S. W. 961, 3 A. L. R. 1522, Ann. page 1540; Moore v. Com., 188 Ky. 505, 222 S. W. 934; Welch v. Com., 189 Ky. 579, 225 S. W. 470; Eagle v. Com., 223 Ky. 178, 3 S. W. (2d) 212.

3. The instructions are criticized as incorrect and incomplete. It was not appropriate to instruct on assault and battery. The gravamen of the offense created by the statute is the confederating, or banding together, to intimidate, injure, and disturb (Acree v. Com., 243 Ky. 216, 47 S. W. (2d) 1051), and it is not necessary to instruct on assault and battery, although violence may have been offered in the course of the alleged conspiracy. Slaven v. Com., 197 Ky. 790, 248 S. W. 214; Cobb v. Com., 242 Ky. 424, 46 S. W. (2d) 776; Cf. Myers, Etc., v. Com., 210 Ky. 373, 275 S. W. 883.

The first instruction required the jury to find from the evidence beyond a reasonable doubt that the defendant and his codefendants, or one or more of them, did unlawfully and feloniously confederate or band together for the purpose of intimidating, alarming, or disturbing Willie Love or Roy Love, and, in pursuance of such confederacy or banding together, attempted to stop them and to intimidate them by unlawful methods described in the instruction.

Under that instruction the jury could not convict the appellant unless it found from the evidence beyond a reasonable doubt that he formed or joined a confederacy to intimidate, and that, in pursuance thereof, the victims were intimidated by methods condemned by the law. The second instruction further emphasized the limits of permissible persuasion by defining a wrongful confederation or banding together as a corrupt combination or agreement between two or more persons to do by concerted action an unlawful act, or to do a lawful act by unlawful means. Com. v. Ellis, 133 Ky. 625, 118 S. W. 973; Fulks v. Com., 237 Ky. 642, 36 S. W. (2d) 36.

The trial court further instructed as follows:

"The court says to the jury that the defendant, or in conjunction with others, had the right to talk to or persaude the said Willie Love or Roy Love, at any time or place, to become a member or members of the United Mine Workers of America, or to refuse to work for any coal company provided that he and they talked to or persauded them or either of them, in a peaceable, law-abiding manner, and did not intimidate or alarm or "disturb the said Willie Love or Roy Love."

The complaint is that the proviso, to the effect that the lawful acts permitted "did not intimidate or alarm or disturb said Willie Love or Roy Love," erected no standard for the guidance of the jury, and left the jury free to convict appellant even for an innocent act if the the Love boys were in fact disturbed, alarmed, or intimidated thereby. It is suggested that the phrase should have carried the idea that the acts forbidden should have been such as were reasonably calculated to have a sinister effect upon the parties involved, and must have been committed pursuant to a conspiracy. The instruction first clearly and concisely advised the jury that the appellant alone or in co-operation with others possessed the legal right peaceably to talk with the Love boys, and to persuade them not to work. But the proviso modified the preceding words and may have been understood as condemning such acts, if the Love boys were in fact intimidated by them. The element of confederating or banding together for the unlawful purpose was entirely omitted, and yet it was the very essence of the offense charged. The issue was a close one, and it was vital that the instructions should clearly and correctly define the line between lawful and unlawful conduct.

The case fundamentally presented a direct conflict between the rights of the appellant and the rights of the Love boys, both safeguarded by the law. As said in the case of Com. v. Morton, 140 Ky. 631, 131 S. W. 506, 508, Ann. Cas. 1912B, 454:

"The right to live in peace and quiet, and pursue according to his own inclinations such lawful employments as he pleases, is one of the highest privileges of the citizen. It is one of the inalienable rights guaranteed to him by the Constitution that no man or set of men can abridge or deny. Every citizen of the commonwealth is entitled to be protected in the peaceable enjoyment of any legitimate business or occupation he is following. He has a right to pursue his vocation or employment without molestation, or threat, or violence. . . . No person or persons have the right to undertake to compel him by threat or intimidation to leave his home, or abandon his business or calling, or to alarm or disturb him in the quiet possession of either."

On the other hand, men engaged in a lawful strike as was the appellant and his associates have a lawful right to assemble and to address their fellow men and to endeavor in a peaceful, reasonable, and proper manner to persuade them regarding the merits of their cause, and to enlist sympathy, support, and succor in the struggle for a betterment of working conditions, or for higher wages, or for the advancement of their interests. American Steel Foundaries v. Tri-City C. T. Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360; Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; Underhill v. Murphy, 117 Ky. 640, 78 S. W. 482, 25 Ky. Law Rep. 1731, 111 Am. St. Rep. 262, 4 Ann. Cas. 780; Nann v. Raimist, 255 N. Y. 307, 174 N. E. 690, 73 A. L. R. 669.

Yet the acts permitted must not be carried to the extent of violating the statute involved in this case. The line of demarcation between coercion by threats or menaces, forbidden by the statute, and persuasion by arguments addressed to reason, allowed by the authorities, is not always distinct and unmistakable. The limits grow dim as the point of separation is approached, and the decision of each case depends upon an appreciation and interpretation of the testimony. In this case the evidence was such as to support either conclusion, depending upon the credibility of the witnesses, and the verdict of the jury in such a case is conclusive on the parties, as well as the court. The instructions, however, should leave no room for cavil, but should distinctly and definitely delineate the rights of both the defendant and the commonwealth. Cf. Newton & Harper v. Com. (Ky.) 49 S. W. (2d) —, this day decided. They should advise the jury accurately the law applicable to the state of facts found from the evidence to have been established. The defense, in a case of this character, should be submitted in a separate instruction substantially as follows: If you believe from the evidence that the defendant, Mervin Alsbrook, joined the crowd on the occasion in question solely for the purpose of peaceably persuading the men who were proposing to work not to take the places of the striking miners, and did not do so in pursuance of a confederacy to intimidate, alarm, or disturb them, or any of them, in the manner and by the means defined in the first instruction, you will find him not guilty.

The judgment is reversed, for a new trial in conformity to this opinion.

Whole court sitting.