## Commonwealth v. Ramey.

Oct. 3, 1939.

R. Monroe Fields, Judge.

Hubert Meredith, Attorney General, and· J. E. Childers for appellant.

Joe P. Tackett and F. M. Burke for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Certifying the law.

The appellee, Ted Ramey, and six of his associate employees of the Barrowman Coal Mining Company, were jointly indicted in the Pike circuit court, charged with the crime of confederating and banding themselves together for the purpose of intimidating, alarming, etc., Joe Smith, Ersel Ratliff and others, whose names to the grand jury were unknown, an offense denounced by the provisions of Section 1241a-1, Kentucky Statutes, which are as follows:

"If any two or more persons shall confederate or band themselves together for the purpose of intimidating, alarming, disturbing or injuring any person or persons   *   *   *   they, or either of them, shall be deemed guilty of a felony, and upon conviction shall be confined in the penitentiary not less than one nor more than five years."

Upon call of the case for trial at the February, 1937, term of court, the jointly indicted defendants demanded a severance and the commonwealth elected to first try the appellee, Ted Ramey.

Upon the conclusion of the evidence for the com-

monwealth, the trial court directed the jury to return a verdict of not guilty, resting his conclusion upon the ground that there was a total failure of proof upon the part of the commonwealth conducing to show or connecting the accused with the commission of the crime charged.

The trial judge, it may be conceded, has the same right and authority to give a peremptory instruction in a criminal proceeding that he has in a civil action, from which it results that if the evidence introduced in behalf of the commonwealth fails to incriminate the defendant, or is wholly insufficient to show his guilt of the offense charged, it becomes not only the right, but the duty, of the trial judge to instruct the jury to return a verdict of not guilty.

It is not, however, within the authority or province of the trial court to take from the jury a criminal prosecution, if there is any evidence, however slight it may be, conducing to show that defendant is guilty of the offense charged. Commonwealth v. Murphy, 109 S. W. 353, 33 Ky. Law Rep. 141. Further, in the cited case it is announced that:

"This rule of practice is not found directly in either the Code or the statutes, but it is firmly established as a part of the criminal jurisprudence of the state, and is uniformly applied by this court in considering appeals in criminal cases when a reversal is asked because the verdict is flagrantly against the evidence, or is not supported by sufficient evidence, and should control the lower courts in the disposition of criminal cases. Vowells v. Commonwealth, 83 Ky. 193; Patterson v. Commonwealth, 86 Ky. 313, 5 S. W. 387, 765; Green v. Commonwealth, 83 S. W. 638, 26 Ky. Law Rep. 1221; Martin v. Commonwealth, 106 S. W. 863, 32 Ky. Law Rep. 657."

In accord with such statement of this rule, see Kennedy & Wigginton v. Commonwealth, 194 Ky. 502, 239 S. W. 796, 797, wherein the rule was thus enunciated:

"It is well settled in this jurisdiction that a directed verdict is not authorized in a criminal prosecution where there is any evidence, however slight, conducing to show that the defendant is guilty of the offense charged. Gordon v. Commonwealth, 136

Ky. 508, 124 S. W. 806; Commonwealth v. Little, 140 Ky. 550, 131 S. W. 387."

The commonwealth here appeals from the directed verdict and judgment of acquittal entered thereon, asking for a certification of the applicable law, here necessary for trying the pending six other cases of the defendants jointly indicted with appellee and charged with violation of Section 1241a-1, Kentucky Statutes, denouncing as a crime the offense of banding and confederating together for the purpose of intimidating, alarming, etc., another.

Sections 335 and 337, Criminal Code, authorize an appeal on behalf of the commonwealth, even when there can be no reversal, where it appears that it is important, as it is here stated, for the correct and uniform administration of the criminal law, that this court should pass upon the question presented on the appeal.

Accordingly this appeal is before us, asking a certification of the law under the authority of such code provisions.

While conceding that our disposition of this appeal will not affect the appellee, Ramey, as the verdict of acquittal returned under the direction of the court operates to free him from a second prosecution for this same offense, yet (under Section 337, Criminal Code), "If the attorney-general, on inspecting the record, be satisfied that error has been committed to the prejudice of the Commonwealth, upon which it is important to the correct and uniform administration of the criminal law that the Court of Appeals should decide," he may take an appeal for the purpose of having a certification of the law. Commonwealth v. Cain, 77 Ky. 525, 14 Bush 525, 4 Ky. Law Rep. 38; Commonwealth v. Cessna, 140 Ky. 25, 130 S. W. 811; Commonwealth v. Murphy, 109 S. W. 353, 33 Ky. Law Rep. 141.

It is the contention of appellant that the court erred in directing the jury, at the close of the commonwealth's evidence, to find a verdict for the defendant, his challenged ruling being based upon his conclusion that the evidence heard wholly failed to in any wise incriminate appellee or conduced to show his guilt of the offense charged.

We have very carefully examined the evidence introduced for the commonwealth upon Ramey's trial, for

the purpose of determining whether or not there was any testimony given by its several witnesses conducing to show that appellee was guilty of the crime charged by the indictment jointly against him and his six associate members of their labor union, that they did feloniously band and confederate themselves together for the purpose of intimidating, alarming and disturbing Joe Smith and Ersel Ratliff and others (whose names to the grand jury were unknown) and that they did, in pursuance of said conspiracy entered into, on May 7, 1935, intimidate and disturb the said Smith and Ratliff, a crime denounced by Section 1241a-1, Kentucky Statutes.

The proof given by the commonwealth's witnesses before the trial court, briefly summarized, is to the effect and tends to show that all of these seven jointly indicted defendants were at one time employees of the Barrowman Coal Mining Co. and were such when, in 1934 or 1935, the United Mine Workers of America organized a miners' union among this mining company's employees, and that Ted Ramey was elected president of this "local" and was such at the time and upon the occasion herein complained of.

It further appears by the proof that soon after the organizing of this mining company's employees, they were called out on a strike, when appellee, together with his named associate miners and other members of this "local" (numbering some thirty-five or forty), by way of furthering the winning of the strike, began to picket the Barrowman mine for the purpose of persuading by one means or another its employees to quit their jobs and not return to them during the period of the strike, during which the company was refusing to recognize the union organization and trying to operate its mine with non-union laborers, conspicuous among whom were Joe Smith and Ersel Ratliff, the indictment charging that the named defendant union miners had confederated and banded themselves together for the purpose of intimidating, disturbing and injuring them.

The evidence is further that on the particular occasion complained of, Joe Smith and Ersel Ratliff, upon going to the mine for the purpose of returning to their jobs, were met at the mine entrance by the appellee, Ramey, and his associate union miners, who undertook to first persuade them not to work in the mine, but that, upon their refusal to yield to these pickets' lawful, per-

suasive inducements not to return to work and their manifestation of a continued will and intention to enter the mine and return to their jobs, as testified by Ersel Ratliff, the appellee Ramey climbed upon a pile of ties, from which he addressed and harangued his union associates and pickets substantially as follows:

> "Members of the United Mine Workers: You heard what that man (Ersel Ratliff) said. He says he ain't going off nor ain't going to join the check off. Are we going to let a man come in here and scab on us?"

Further witness testified, "They all said 'No.' He (Ramey) says, 'I will ask two good men to step up here and take these boys off the hill,' and Orison Potter stepped up in front of me and David Stapleton in front of Joe Smith and I told them 'I have got a right to work here,' and they said No I didn't, they were on a strike there, * * * that I had to join the union or not work and he (Ramey) told them the time was up, for to take us off, and Lee Ad Swinney (an uncle of Joe Smith's) spoke up and said, 'You won't have to take Joe off. I will send him off,' and I told them, 'Well, just let us stay around here then,' and they ganged up around us and I told them that rather than have any trouble I would go off myself."

This witness, when recalled, testified that he went off the hill; he did so because he was afraid not to.

Substantially the same account of the acts and character of the conduct of the defendants upon this occasion was given by some five or six other commonwealth witnesses, except that the witness Harve Ratliff testified, in addition to giving a similar description of the actions of appellee and his associates upon this occasion, that one morning before the strike trouble began, Ramey had asked him to take his boys off their mine jobs and that he had taken them off for about two weeks and that the third week, when they started back to work at the mine, one of the boys got killed.

Defendant's objection made to this statement was at the time overruled. Further witness was asked, "If shortly after this speech by Mr. Ramey, going up on the Barrowman incline to this mine, one of your boys wasn't shot from ambush and killed?", to which the defendant again objected and his objection was again overruled. However, the court, upon the conclusion of the common-

wealth's evidence, thus admonished the jury as to his having permitted the admission of such evidence:

"Gentlemen of the Jury: I permitted some evidence to go to you to the effect that Harve Ratliff's son was killed up there some time after this difficulty there in which this speech was made or said to have been made by Teddy Ramey. There is nothing in this evidence that connects Teddy Ramey with that killing in any way or shows he was in any way responsible for it and I will now instruct you to disregard that evidence entirely."

We conclude that the commonwealth's criticism of this instruction given the jury, that they disregard this evidence, is without merit.

Such being the substance of the evidence introduced by the commonwealth, we are constrained to conclude that the trial court erred in giving the complained of directed verdict to acquit the defendant, upon the ground that the evidence introduced in behalf of the commonwealth wholly failed to incriminate the defendant or was wholly insufficient as evidence tending to show the defendant, Ramey, guilty of the crime charged.

This evidence, when unexplained and uncontradicted, and its truth and all reasonable inferences therefrom conceded, for the purpose of testing the propriety of the court's giving a directed verdict to acquit the defendant, was clearly sufficient to take the case to the jury, as constituting some evidence tending to incriminate the defendant with the commission of the offense charged.

The commonwealth's evidence clearly tended to show that the defendant and his union associates upon this occasion were acting in concert, or picketing near the mine entrance, to prevent Smith and Ratliff from entering and working in the mine.

This evidence shows that the picketing defendants, upon their efforts to persuade Smith and Ratliff not to enter the mine failing, immediately employed the unlawful method of preventing their entering the mine by threats, force and coercion, by ordering their forcible removal from the mine.

The jury, not the court, such being the evidence, was the proper tribunal, established by law, to determine the quality of the defendant's conduct, the credi-

bility of the commonwealth's witnesses and the probative value of their testimony.

The ruling of the trial court, in directing a verdict of acquittal, we conceive was clearly erroneous, in that it took the decision of the issues stated away from the jury, in disregard of the rule that the case must be submitted to it where there is any evidence tending to prove the offense charged.

While the evidence here does not show that Smith and Ratliff were in fact expelled by force from the mine, which they were attempting, in the exercise of their lawful right, to enter in order that they might work, it tends to show that they were threatened with forcible expulsion from the entrance of the mine by the pickets summoned and commanded by Ramey to "take them off the hill."

The law is that force threatened is the equivalent of force exercised, in that it amounts to the intimidation and coercion inhibited by Section 1241a-1, Kentucky Statutes, here charged violated. Ellis v. Journeymen Barbers' International Union, 194 Iowa, 1179, 191 N. W. 111, 32 A. L. R. 756. See also Acree v. Commonwealth, 242 Ky. 216, 47 S. W. (2d) 105, wherein we held that confederating together to do a felonious act is a crime, under Section 1241a-1, Kentucky Statutes, whether it is consummated or not.

The facts of the instant case are very similar to those appearing in the case of Alsbrook v. Commonwealth, 243 Ky. 814, 50 S. W. (2d) 22, 25, where (as here) there was presented a conflict between the rights of the union miners to peacefully picket and the right of the Love boys to live in peace and quiet and pursue, according to their own inclinations, such lawful employments as they desired, as being one of the highest privileges of citizenship, under which one has the right to pursue his vocation or employment without molestation, or threat, or violence and, as quoted with approval in the Alsbrook case, supra, from Commonwealth v. Morton, 140 Ky. 628, 631, 131 S. W. 506, Ann. Cas. 1912B, 454:

> "No person or persons have the right to undertake to compel him by threat or intimidation to leave his home, or abandon his business or calling, or to alarm or disturb him in the quiet possession of either."

Also in the Alsbrook case, we said that:

"On the other hand, men engaged in a lawful strike as was the appellant and his associates have a lawful right to assemble and to address their fellow men and to endeavor in a peaceful, reasonable, and proper manner to persuade them regarding the merits of their cause, and to enlist sympathy, support, and succor in the struggle for a betterment of working conditions, or for higher wages, or for the advancement of their interests. American Steel Foundries v. Tri-City C. T. Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360; Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; Underhill v. Murphy, 117 Ky. 640, 78 S. W. 482, 25 Ky. Law Rep. 1731, 111 Am. St. Rep. 262, 4 Ann. Cas. 780; Nann v. Raimist, 255 N. Y. 307, 174 N. E. 690, 73 A. L. R. 669."

It is obvious that the question here presented is not one of the labor union's right to resort to peaceful picketing, as a legal means employed to effect the success of their strike, but rather as to whether or not the conduct of the pickets and the means employed by them upon this occasion were lawful.

It may be conceded that the defendants had the right to make a concerted effort to win their strike, by using all persuasive means with the employees of the mine to get them to abandon their jobs and not return to work during the strike, for the reason that their resort to and exercise of such persuasive and legal means was but incidental to the full exercise of their conceded and clearly established right to strike for the improvement of their condition with respect to hours, labor, wages, etc. But while picketing may be lawfully done, as stated, it may also mean, as it is often conducted, the banding and assembling of men at or near the plant of the employer for the purpose not of peaceful persuasion alone, but for the purpose of coercing, threatening or intimidating and turning aside against their will those who would go to and from the picketed plant to work or seeking work, in which instances picketing employing such methods is generally held to be unlawful and to constitute such action and conduct as come within the bane of the statute condemning as a crime the act of confederating and banding together for the purpose of intimidating, alarming, etc., a person or persons.

As said in 16 R. C. L., Section 33, page 454:

"The decision of the question whether 'picketing' is lawful or unlawful depends upon the circumstances surrounding each case. There must be taken into account the size of the guard, the extent of their occupation of the street, and what they say and do. Taking every circumstance into account if it appears that the purpose of the picketing is to interfere with those passing into or out of the works, by other than persuasive means, it is illegal. If the design of the picketing is to see who can be the subject of persuasive inducements, such picketing is legal. Whether picketing is lawful or unlawful depends in each particular case upon the conduct of the pickets themselves."

The evidence here presented, consisting alone of the testimony of the several commonwealth witnesses, when taken as true, together with all fair inferences to be drawn therefrom, when testing its sufficiency to constitute any evidence conducing to show the defendant's guilt of the charges preferred, clearly constituted some competent evidence tending to incriminate the accused and therefore leads us to conclude that the learned trial court erred in giving a directed verdict that the jury find the defendant not guilty upon this evidence. While a verdict directed by the court is nominally the action of the jury, it is in fact a decision of the court that, as a matter of law, the plaintiff's evidence is wholly insufficient to show defendant's guilt of the offense charged.

The showing of the commonwealth's evidence was here that the defendants confederated and banded themselves together to picket the Barrowman mine and that, pursuant to such agreement, they assembled themselves at the mine, where, when acting in concert, they employed the means of force and coercion to intimidate and injure Smith and Ratliff, to prevent them from returning to their jobs at the mine, by directing and threatening their forcible removal therefrom.

Accepting this evidence as true, clearly their conduct in so doing was unlawful and in violation of the provisions of Section 1241a-1, Kentucky Statutes.

In view of such being the showing of the proof, we are constrained to hold that the court prejudicially erred in directing a verdict of acquittal.

This opinion is ordered to be certified to the lower court as the law of the case.