# Tobin et al. v. Shapiro, etc.

*Douglass & Handler* and *George Kunkel*, for plaintiffs.

*Brewster Wickersham* and *Samuel Handler*, for defendant.

*Earl Handler*, for local union.

SHEELY, P. J., fifty-first judicial district, specially presiding, March 28, 1938.—This is a bill in equity accompanied by injunction affidavits filed by Edward J. Tobin, Harrisburg General Organizer for the International Ladies' Garment Workers Union, an unincorporated association, and Effie Beck, president, and Margaret Gully, treasurer of Local No. 108 of the International Ladies' Garment Workers Union in behalf of themselves and all those interested against David Z. Shapiro, individually and trading as Capitol City Dress Company, praying for an injunction enjoining defendant from violating a contract with the International Ladies' Garment Workers Union, and from employing in the manufacture of garments any employes who are not members in good standing in the union or who have not signified their intention of so becoming, and from interfering with the union in its right to bargain collectively on behalf of defendant's employes, and other matters arising out of said contract and the employment of defendant's workers. The bill alleges that on April 5, 1937, defendant entered into a contract with the union, containing provisions recognizing the

union as the sole bargaining agent for his employes, prescribing the terms of employment, providing for a "closed shop" and the "check off", and providing for the settlement of disputes. It is further alleged that the effective date of the contract was postponed from time to time until on or about August 5, 1937, at which time defendant was notified that the contract would become effective on August 16, 1937; that on August 16, 1937, defendant refused to perform the contract or to abide by the term thereof, and committed a number of breaches of the terms of said contract; further, that on or about August 6, 1937, defendant aided and abetted the formation of a company union for the purpose of preventing his employes from joining the plaintiff union, and did other acts in pursuance of said purpose. . . .

## Discussion

We are here asked to issue an injunction restraining defendant from doing certain acts which plaintiffs contend to be in violation of his contract with it. The contract is between a labor union and defendant and has to do with the terms of employment and the representation of defendant's employes. The first inquiry is whether, under the facts of this case, we have authority to issue the injunction prayed for.

The controversy between the parties is a labor dispute. The Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, sec. 3 (c), provides that: "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe, and regardless of whether or not the employes are on strike with the employer."

The contract in question provides for wages, hours, grievances, a "closed shop", and the "check off". The controversy does, therefore, concern terms and conditions of employment and the association or representation of persons in negotiating and maintaining such terms and conditions and does arise out of the respective interests of employer and employe. The controversy comes within the broad definition of a labor dispute as defined in this statute.

Under the provisions of section 11 of the Labor Anti-Injunction Act, supra, no permanent injunctive relief may be granted to a complainant, in a case involving or growing out of a labor dispute, who has failed to make every reasonable effort to settle such dispute, either by negotiation, or with the aid of any available governmental machinery of mediation or voluntary arbitration, or who has violated the public policy declared in section 2 of the act. Complainant in this case has made no effort whatever to settle this dispute in any of the methods open to it. It would appear, therefore, that plaintiff has failed to show sufficient facts to give us jurisdiction to grant the relief prayed for, by reason of the limitations upon our jurisdiction imposed by that statute.

The facts of this case are analogous to those of Bulkin et al. v. Sacks, 31 D. & C. 501. The plaintiff union there complained that, in violation of its "closed shop" contract with defendant, the defendant had employed a person not a member of the union and that upon the refusal of the employe to join the union, defendant refused to accede to the demand that he either require her to become a member of the union or discharge her. Judges Flood and Levinthal refused a preliminary injunction on the ground that complainant had not satisfied the conditions essential to give the court jurisdiction, having failed to negotiate for a settlement and to solicit the aid of governmental machinery of mediation. The court there said:

"A reading of these statutes [The Labor Mediation Act, the Labor Relations Act, and the Labor Anti-Injunc-

tion Act] indicates that the public policy is not merely to protect.labor against the issuance of injunctions and to compel or protect collective bargaining, but also to relieve the courts from the necessity of passing upon or even considering these cases until all other methods of settling them have failed. There is a very definite policy of keeping labor disputes out of the courts."

See Kirmse et al. v. Adler et al., 311 Pa. 78 (1933). The opinion then points out that this policy applies just as well when the employe or the union is the complainant as when the employer is the complainant and that the language of the act makes it clear that it does.

In Lauf et al. v. E. G. Shinner & Co., Inc., 303 U. S. 323, decided on February 28, 1938, the same general problem arose under the Norris-LaGuardia Labor Anti-Injunction Act. In that case the union was seeking to coerce complainant to require its employes, as a condition precedent to their continued employment, to become members of the union. Complainant sought an injunction restraining the union from doing various acts of coercion, including picketing. The Supreme Court of the United States held that the matter was a labor dispute both under the law of Wisconsin (Laws of Wisconsin, 1937, p. 54, which is similar to that of Pennsylvania) and under the Norris-LaGuardia Act of March 23, 1932, 47 Stat. at L. 70, and that the district court, therefore, had no jurisdiction to grant the injunction unless all the facts required by the latter act as a condition precedent to issuing the injunction had been found to exist.

Furthermore, we think that complainant has violated the public policy of the Commonwealth as declared in section 2 of the Labor Anti-Injunction Act, and therefore is barred by that act from obtaining the relief prayed for. At the time the contract in question was negotiated plaintiff represented one of defendant's 79 employes. At the time of the institution of this action it represented 22 of 45 or more employes, and at no time represented a majority. The contract provided for a "closed shop", and one

of the prayers of plaintiffs' bill is that defendant be enjoined from employing workers who are not members in good standing of the plaintiff union or who have not signified their intention of so becoming. Were this prayer granted all nonunion employes would have to be discharged.

The public policy of the Commonwealth as declared in section 2 (a) of the act is that:

". . . though he [the individual unorganized worker] should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint or coercion of employers of labor or their agents in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection".

In the Pennsylvania Labor Relations Act, supra, sec. 2 (c), it is declared to be the public policy of the State "to encourage the practice and procedure of collective bargaining and to protect the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection, free from the interference, restraint or coercion of their employers."

The effect of the contract in question is to interfere with the individual unorganized workers of defendant's shop in the designation of representatives to negotiate the terms and conditions of their employment. Selection of a union by the employer and the making of a "closed shop" contract with such union when it admittedly represents but one of his 79 employes is not only interference with the employes' right of selection of representatives, but is also coercion and restraint in its worst form. The individual unorganized worker has nothing to do with

the matter; he can accept the representative selected by the employer or he can find other employment.

The fact that the union is an organized international workers' union and is sincerely interested in the welfare of the employes, as is the plaintiff union, does not alter the situation. If the employer can select one union for his employes, he can select another. As between different unions the problem becomes one of bidding; the union offering the best terms to the employer is the successful bidder.

In Lauf et al. v. E. G. Shinner & Co., Inc., supra, Mr. Justice Butler points out in his dissenting opinion (p. 334) that if the employer in that case had yielded to the demands of the union to compel his employes to join that union or suffer dismissal, "its action as an employer of labor unquestionably would have constituted an 'interference, restraint, or coercion' of its employees in the designation of their representatives, in the teeth of the declared policy of the Act." That is precisely the situation in this case.

We need not consider whether plaintiff in this case has come into equity with clean hands, or whether there is an adequate remedy at law, or the question of the jurisdiction of the Labor Relations Board, or the other questions raised by defendant. The conclusion that the controversy involves a labor dispute and that plaintiff has not complied with the essential conditions prescribed by the Labor Anti-Injunction Act of 1937 prevents us from granting the relief prayed for. That conclusion disposes of the entire controversy. . . .

### Decree of court

And now, March 28, 1938, upon consideration of the foregoing case, it is ordered, adjudged, and decreed that plaintiffs' bill of complaint be and it is hereby dismissed at the cost of plaintiffs.

The prothonotary is directed to enter the foregoing decree nisi and to give notice to the parties or their coun-

sel of record of the entry thereof and unless exceptions are filed thereto within 10 days after such notice the decree nisi shall be entered as a final decree.