## Kirmse et al. *v.* Adler (et al., Appellants).

Argued December 9, 1932.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Frank B. Murdoch, Jr.,* for appellants.——Defendants were entitled to enlist public support by the distribution of literature as long as they used no coercion, as long as the public was free to make an independent

choice as to whether it would patronize or refuse to patronize the plaintiff and as long as their statements to the public were not false and misleading: Kraemer Hosiery Co. v. Hosiery Workers, 305 Pa. 206.

The test of whether or not mere words should be enjoined, is whether or not they were uttered with "disinterested malevolence": Nann v. Raimist, 255 N. Y. 307.

The defendants have the same right to use a music producing automobile for advertising purposes, or to attract attention, as does any merchant, as long as it does not play the music records so loud or so continually in a given place as to annoy a person of ordinary sensibility, and thus constitute a nuisance. If such an authority is needed, the court can be referred to the case of United Chain Theatres v. Moving Picture Machine Operators Union, 307, 50 Fed. (2d) 189.

The test of the legality of picketing is whether the spirit behind the picketing is to intimidate or use physical violence: Jefferson & Indiana Coal Co. v. Marks, 287 Pa. 171; Am. Foundries v. Tri-City Council, 257 U. S. 184.

*John A. Boyle*, for appellee.—The chancellor's findings of fact were proper: Foley v. Barnett, 303 Pa. 218; Hamilton v. Fay, 283 Pa. 175; Miller's Est., 279 Pa. 30; Kraemer Hosiery Co. v. Hosiery Workers, 305 Pa. 206.

A court of equity should take judicial notice that the conduct of the appellants would tend to create a condition of fear in the minds of patrons and thereby cause a loss of patronage: Allis-Chalmers Co. v. Iron Moulders Union, 150 Fed. 155.

The conduct of defendants constituted an illegal boycott of appellee's business: Seattle B. & M. Co. v. Hansen, 144 Fed. 1011; Hitchman C. & C. Co. v. Mitchell, 245 U. S. 229; Erdman v. Mitchell, 207 Pa. 79; Purvis v. United Brotherhood, 214 Pa. 348.

Even if the statements made by the defendants on cards and placards that the employer did not employ

union labor were true, the defendants should be restrained: Purvis v. United Brotherhood, 214 Pa. 348; Gompers v. Stove & Range Co., 221 U. S. 418.

OPINION BY MR. JUSTICE KEPHART, February 1, 1933:

Appellee, a corporation, operates the Oxford Theatre in Philadelphia. Prior to June 9, 1930, its employees, including stage hands, operators, musicians and bill posters, were members of a labor union. On that date, feeling it could no longer afford to pay the union wage scale to its stage hands, appellee requested them to accept a reduction. This was refused, and as a result the stage hands were dismissed with two weeks' notice, and left on June 28, 1930. Appellee refused thereafter to employ the men at the union wage.

On April 9, 1931, the activities which prompted these proceedings were begun under the direction of the union of stage employees and motion picture operators, known as Local No. 8. On that date an automobile equipped with a radio appliance for music, such as is daily employed to advertise current attractions in the local theatres of Philadelphia, circulated in the vicinity of the theatre, passing before it at intervals of from five to ten minutes. On the sides of the automobile were placards with the following inscription:

LEST YOU FORGET!
To our Thousands of friends and
Members of Organized Labor

This is to remind you that the
OXFORD THEATRE
does not employ members
of Organized Labor
and we respectfully urge you as our
friend not to patronize the above theatre
Theatrical Stage Employees and
Moving Picture Operators
Members of Am. Fed. of Labor
Penna. State Federation of Labor
Central Labor Bodies of Phila.

On April 13th these acts were repeated. Cards were distributed by hand in the neighborhood bearing the same notice, and three or four members of the union handed similar cards on several occasions to patrons attending the theatre. Proceedings were instituted to enjoin these acts.

The material averments of appellee's bill for this purpose were: first, that the written matter on the cards was false and misleading in that the theatre did on April 9th and 13th employ union labor; second, that the effect of defendants' acts was to intimidate or coerce patrons of the theatre so that many have ceased to attend the performances. Both averments were specifically denied in the answer. The chancellor, after hearing, enjoined appellants from operating any music-producing automobile referring in any manner to the plaintiffs, from distributing any cards referring in any manner to the plaintiffs, and from placing pickets in or about the theatre. The picketing was not pleaded. This appeal followed.

It was shown that on April 9th appellee had in its employ eleven union men. On April 11th the musicians walked out in sympathy with the stage hands. This left but one man, the bill poster, in the employ of the theatre, and the manager was not certain that he was a member of a union.

In support of the charge of intimidation and coercion of the patrons of the theatre the manager and cashier testified that "many people" had complained and they missed some regular patrons, but they could not say how many complained or the reason they or others did not attend the theatre. The direct testimony of patrons on intimidation was limited to two witnesses. One testified the card had no effect upon him, but his wife said she would never go to the theatre again. A woman said she was afraid to attend after receipt of a card because "they are not employing union labor and according to that it might become violent." Nevertheless she saw no dis-

turbance, violence, or any trouble about the theatre. She attended the theatre after receipt of the card.

The foregoing is all the evidence on which the chancellor based his finding that the printed matter was false and misleading and the conduct of defendants created a feeling of fear in the minds of persons who might patronize the theatre.

While it is a rule of our courts that the chancellor's findings will not be disturbed when supported by the evidence (Foley v. Barnett, 303 Pa. 218), it is equally well settled that such findings, unsupported by competent evidence, will be reviewed by the appellate court: Pa. Knitting Mills v. Bayard, 287 Pa. 216. Particularly does this latter principle apply when the case turns upon reasoning or inferences to be drawn from the facts. In such case the trial court's conclusions are always open to review: Hamilton v. Fay, 283 Pa. 175, 179; Kutz's App., 100 Pa. 75.

The question arising from labor disputes have many times been before the courts for solution, but because the matter involves so many intricate details of economic and social life, with the fundamental rights inherent in both contesting parties at stake, it is obvious that these tribunals should not be the ones to decide them. Since no other body has been created to consider these matters, the courts must decide them. This court, however, in considering them has never impressed the strong arm of an equitable injunction unless the circumstances imperatively required it. There must be present evidence showing either disorder, coercion, intimidation, violence, boycott, or threats or acts looking to the same end, no matter how those forces may be set in motion or brought to bear on the parties; unless physical violence, fear or molestation, or breach of the peace follow, or are likely to follow these acts, or property rights are unlawfully damaged, our courts have always refused to act.

The difficulty in such cases does not lie in any uncertainty in the pertinent rules of law, but in their applica-

tion to the exigencies of the particular case. As long as courts must decide these questions, the decision should rest upon a careful balancing of facts, measured by these rights, to the end that the full exercise of a basic privilege by one shall not encroach upon an equally inherent right of the other.

The right of labor to organize for mutual aid and protection to better their condition in the matter of wages and other incidental benefits, has long been recognized by the courts and legislature of this Commonwealth. See Jefferson & I. Coal Co. v. Marks, 287 Pa. 171, 175. The court said in that case, page 176, "Labor unions are therefore not only legitimate but, because their aim and purpose is to better the living conditions of a large part of the body politic, they are a necessary part of the social structure." See also American Steel Foundries v. Tri-City Council, 257 U. S. 184, 209.

It must be apparent that if the courts are to maintain an even balance between the contending parties, labor and capital, we should only interfere when rights and conduct incidental to good government and an orderly existence as above discussed, are infringed by either party. When we depart from this course and assume an arbitrary attitude in favor of either of the parties, we then destroy our usefulness as courts in maintaining law and order, and more especially as the arbiters in matters where justice alone should prevail. Property rights would rest on insecure foundations, and our decision, contrary to the justice of the cause, would so circumscribe the objects of one of the parties as to make its existence useless as a factor in social life tending to better "the living conditions of a large part of the body politic," or as a very much needed agency for employment.

To sustain the injunction in this case on the meager record before us would deprive the appellant of a right which we have said over and over again it possessed, and permit the injunction to issue to its manifest prejudice;

our act would be merely an arbitrary exercise of power. This we will not do. No later than Kraemer Hosiery Co. v. Amer. Fed. F. F. H. Workers, 305 Pa. 206, in an opinion by Mr. Chief Justice FRAZER, a decision which for some reason seems to have been very much misunderstood, we said, at page 215, that labor "was free to act, by peaceful persuasion......by the spoken, written or printed word, to induce employees who had signed those agreements to withdraw from plaintiff's employ and affiliate with the union...... Had this been the course pursued an injunction could not properly have been granted. Appellants also had the right, at a proper time and in a proper way, to point out to plaintiff's employees that their contracts, whether legal or illegal, were unwise, and hence the employees should exercise their privilege to 'withdraw from the employment of said company.' This much is secured to the citizen by the constitutional provision that: 'The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.' "

Appellants are entitled to present their cause to the public by circulars calculated to induce others to stand with them, provided the arguments employed are peaceful and no coercion is attempted. They can inform the public of the existence of their difficulties, the reasons for them, and ask the public for support and request them generally to assist by not patronizing plaintiffs' business. Appellants do not deny their acts were calculated to compel the theatre men to employ men at the union scale by injuring the patronage. The primary aim was the protection of the employment of their members at the union rate of wage, while the means employed involved as a secondary purpose the injury of appellee's patronage. We have held such acts lawful. In Jefferson & I. Coal Co. v. Marks, supra, where the injunction was sustained because of coercion and intimida-

tion, we said, however, at page 176: "Appellants claim that primarily their aim and purpose was to maintain a proper standard of wages by persuading men to stop working for less wages, though the indirect result of this effort was to shut down the Adrian mine, while appellee claims the indirect purpose was the primary one.

"A peaceful effort, individually, collectively or concertedly, to bring about *a cessation of labor* in order to enforce a demand for betterment of wage or living conditions, even though the indirect purpose is accomplished, is not unlawful.

"While the right to form combinations, and through a strike to exert means to prevent men from working, may be lawful, it remains so only as long as the means employed are lawful." If the words "cessation of labor" in this quotation are removed and "cessation of patronage" are substituted, it is apparent that the question in this case narrows down to whether the means here employed are lawful. Unless the means employed are unlawful, the motive for the acts is immaterial.

No malice of any sort or character can be imputed to one who exercises an absolute right, whatever his motives, whereas, in the exercise of a qualified right, the matter of malice and of motive becomes important. In neither case can the law be violated in vindicating and enforcing a right. If one has a legal right to do a particular thing, the law will not inquire into his motive for doing it: Beirne v. Continental Equitable, 307 Pa. 577. Having this unquestioned right to present their case to the public in newspapers or circulars in a peaceful way, if the employer suffers loss from this peaceable assertion of rights, it is a damage without a remedy. The controlling factor must be, do the methods used involve intimidation or coercion in any form? If they do not, but are peaceful and orderly, equity will not interfere.

There is absolutely no evidence or inference of intimidation or coercion that can be drawn from the evidence.

The movement of the automobile through the streets was perfectly lawful in the circumstances here shown, and the music produced from it was not a nuisance: Krocker v. Westmoreland P. Mill Co., 274 Pa. 143; Quinn v. American Spiral Spring & Mfg. Co., 293 Pa. 152. No intimidation or coercion can be predicated on these facts. There was no congregation of people or any occasion for a congregation because of the movement of the automobile. The music did not tend to draw a crowd of noisy or disorderly people (Edmunds v. Duff, 280 Pa. 355), and the defendant had the same right to use a music-producing box to attract attention as any merchant had. Of course, if it played loud, boisterous music, it would constitute a nuisance, and the authorities or any person might in a proper proceeding secure redress for it.

The placards on the sides of the automobile did not contain a single line that would coerce, intimidate, or in the slightest degree control the mind. They stated that the theatre did not employ members of organized labor and "we respectfully urge you as our friend not to patronize the above theatre." This language involved no element of coercion or intimidation, either as a fact or in the legal sense of these terms. What coercion can be predicated on a simple request made in writing on a placard or on a card not to deal with, trade, or do business with a certain named individual? The minds of the parties who received or saw the notice were free to follow their unrestrained inclination; they were at entire liberty to go to the theatre unmolested if they saw fit. There was not the slightest allusion to a threat of any character. The writing itself was sufficient evidence of its own innocence, yet this was the substantial ground of appellee's complaints. See Nann v. Raimist, 255 N. Y. 307.

The men who passed the cards to persons entering the theatre neither did nor said anything which involved any elements of threat, but from all that the testimony re-

veals merely passed the cards, as circulars are generally handed out on the streets.

Appellee contends that the distribution of the cards by the three or four members of the union on the streets was an unlawful picketing. This question was not raised by the pleadings, nor was any evidence submitted to directly show such activity. There is no question here of the right to picket in a strike. There has been no attempt by respondents to induce complainant's present employees to cease work as punishment to the owner, or to force men to join the union. It may have been, and no doubt was, the purpose of the union, through the acts complained of, to secure work for union men even though it resulted in the discharge of nonunion men: Pickett v. Walsh, 192 Mass. 572, 78 N. E. 753. The court below construed certain acts to be an unlawful picketing and enjoined them, and in so doing the judge not only went beyond the prayer of the bill, but the facts on this record will not sustain his decree.

Picketing, if peaceful and unaccompanied by coercion, duress, or intimidation, is lawful: American Steel Foundries v. Tri-City Council, supra; Kraemer Hosiery Co. v. Amer. Fed. F. F. H. Workers, supra; Jefferson & I. Coal Co. v. Marks, supra. There was not a particle of evidence of hostile feeling shown toward the people who went into the theatre. The mere distribution of the cards was not evidence of it; they were passed out like thousands of store or other similar circulars are to-day. The men distributing the cards did not speak to the patrons. The cards were handed out for the purpose of inducing the public not to attend the theatre, which, as we have shown above, is a perfectly legal means of accomplishing the main and undoubted purpose, to wit, securing employment for union men. The distribution was not calculated to, nor did it, create fear for their personal safety if they continued to go to the theatre. There was no annoyance, intimidation, or moral coercion from these acts. It is true a few men were posted in

front of the theatre building and handed cards to those entering, but they did not go upon the theatre property, and this distribution of cards occurred on one day only. Of course such conduct in front of or adjoining the theatre entrance, continued over a period of time, would create a situation calculated to engender annoyance, fear, and intimidation of possible patrons: Bomes v. Providence Local No. 223 (R. I.), 155 A. 581. In that case, the men having placards on their hats.of the .same tenor as the cards here, spoke to patrons in a manner intended to create an impression of danger. The judge in that case found coercion and intimidation from the manner of approach to patrons. No such evidence appears in our case. Standing alone, acts such as passing cards would indeed be a novel form of "unlawful picketing." The distribution of store or other like circulars would all fall within such category.

The defendants had the right of communication, or persuasion, provided their appeals were not abusive, libelous, or threatening, and that the manner of approach to persons visiting the theatre was orderly. We have decided this so often that citation of authorities is scarcely necessary. The court below in its decree went far beyond any prayer contained in the bill. We hold that the court was clearly in error in granting the injunction, as the acts complained of have not a single element that the courts have deemed essential for equitable relief in a proceeding of this sort.

The decree of the court below is reversed, and the bill is dismissed at cost of appellee.

Mr. Justice SCHAFFER dissented.