## Music Hall Theatre v. Moving Picture Machine Operators Local No. 165 et al.

(Decided June 6, 1933.)

640

CHARLES E. LESTER, Jr., and JAMES M. GILBERT for appellant.

ROGER L. NEFF, Jr., REYNOLD L. MURPHY, and POGUE, HOFFEIMER & POGUE and J. A. CULBERTSON for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

This suit was brought by the appellant, Music Hall Theatre, that is, John Burkart, doing business and operating a moving picture theater in Newport under that style, against the appellees, "Moving Picture Machine Operators, Local No. 165, International Alliance Theatrical State Employees of United States and Canada," an unincorporated association, which is a labor union, together with its officers and several individuals, to enjoin them and their agents from picketing and interfering with plaintiff's business. Their action was charged to be maliciously and unlawfully done and their representations to the public to be false and misleading, all of which had resulted in intimidation and coercion of

prospective patrons. For several years members of this Union had been employed in operating plaintiff's machines. It appears that the theater had closed in the summer because its expenses were exceeding its income. As authorized by the contract which plaintiff had with the union, notice was given of its termination on August 31st. Negotiations to make a new contract were futile.

Before this time, an individual had been conducting a trade school in Cincinnati, in which the operation of moving picture projection machines was taught. He had incorporated an organization known as "Moving Projectionists' Operators of America." Upon completing the prescribed course, the students in this school were given a card of membership in it. The organization was in no way affiliated with the American Federation of Labor or any other union. It was an adjunct of the trade school, and seems to have been merely a scheme which permitted the specious statements that its members were members of a union. This case has the atmosphere of principally being a contest between the union and the trade school.

On September 4th the plaintiff employed one of its members of this school organization at a substantially less wage than he would have had to pay a member of the defendant Union. Thereupon the defendants and their representatives began a systematic picketing of plaintiff's theater by having a man patrol the sidewalk at and near its entrance carrying a banner with this inscription: "This Theatre does not employ Union Operator member of Local No. 165, M. P. M. O. & I. A. T. S. E. of U. S. A. & Can. Affiliated with the American Federation of Labor." Two or three men accompanied the bearer of the banner. Handbills were distributed, but the record does not disclose their contents. There is substantial evidence that, in addition to these acts, the picketers accosted prospective patrons at the entrance and about the theater, and, calling them aside, talked with them. Some of them were told that the building was a fire trap; that no show was going on at the time, and it would not open; that the operators were not union men, and did not understand their business; and that there would likely be a fire. All of these things had the effect of intimidating the patrons or prospective patrons of the theater. Excepting the inscription on the banner, they were false and misleading. The

result was a falling off in plaintiff's business of about 50 per cent.

The circuit court refused to issue the injunction, and the appeal is brought from that judgment.

The development of the law in respect to labor disputes and the use of injunctive processes has become rather complex. This is not surprising, since the contests involve a conflict between what are regarded as inherent and inalienable rights and the right to their protection. On the one hand are the rights of proprety, of contract, of doing business in one's own way, of being let alone; the freedom of conducting a lawful business, and the incidental right to good will and to appeal to the public for patronage; and similar paramount privileges. On the other hand are the rights of economic self-preservation; of improving economic and social conditions; of agreement among men; of free speech and action; of pursuing one's safety and happiness; of striving to achieve legitimate ends and benefits by concert of action or collective bargaining; and the privilege of assembling together in a peaceable manner for the common good. Upon this side may be placed also the unconscionable sweatshops and lamentable conditions under which employees are all but compelled to work—those things which challenge an enlightened, humane society to opposition. In the different cases, involving as they do different states of fact and conditions, the different minds of the courts have worked out diverse conclusions. But there is a common ground and well-founded principle recognized by all the authorities; that is, that force, violence, or threats thereof, terror, menace, intimidation, coercion, deliberate misrepresentation, spreading of falsehoods, and the like, can never be tolerated.

The case at bar presents only the right of picketing the employer's premises without trespass thereon. The law recognizes the right of peaceful picketing. Although that term is sometimes criticized as a contradictory one, since the word "picketing" is taken from the nomenclature of warfare and is strongly suggestive of a hostile attitude, it has acquired a significance and meaning commonly understood. It connotes peaceable methods of presenting a cause to the public in the vicinity of the employer's premises. Labor has the recog-

nized legal right to acquaint the public with the facts which it regards as unfair, to give notoriety to its cause, and to use persuasive inducements to bring its own policies to triumph. Such picketing or publicity is not per se unlawful. It is only when the evil, tortious factors to which we have alluded are brought into play that it becomes illegal. Nor will peaceable picketing be permitted to become a nuisance. The bounds of legitimacy may be crossed in many and divers ways. Whatever those ways are, they are wrong and under condemnation. Their commission will be enjoined as irreparable interference and in order to avoid a multiplicity of suits. 16 R. C. L., pages 444, 453, 455, 462; Underhill v. Murphy, 177 Ky. 640, 78 S. W. 482, 25 Ky. Law Rep. 1731, 111 Am. St. Rep. 262, 4 Ann. Cas. 780; Saulsberry v. Coopers' International Union, 147 Ky. 170, 143 S. W. 1018, 39 L. R. A. (N. S.) 1203; Diamond Block Coal Company v. United Mine Workers of America, 188 Ky. 477, 222 S. W. 1079; Booker & Kinnaird v. Louisville Board of Fire Underwriters, 188 Ky. 771, 224 S. W. 451, 21 A. L. R. 531; Exchange Bakery & Restaurant v. Rifkin, 245 N. Y. 260, 157 N. E. 130; Empire Theatre Company v. Cloke, 53 Mont. 183, 163 P. 107, L. R. A. 1917E, 383; Harvey v. Chapman, 226 Mass. 191, 115 N. E. 304, L. R. A. 1917E, 389; McMichael v. Atlanta Envelope Company, 151 Ga. 776, 108 S. E. 226, 26 A. L. R. 149; Robison v. Hotel & Restaurant Employees Local No. 782, 35 Idaho, 418, 207 P. 132, 27 A. L. R. 642, and note; Ellis v. Journeymen Barbers' International Union, 194 Iowa, 1179, 191 N. W. 111, 32 A. L. R. 756; Thomas v. City of Indianapolis, 195 Ind. 440, 145 N. E. 550, 35 A. L. R. 1194; Jefferson & Indiana Coal Company v. Marks, 287 Pa. 171, 134 A. 430, 47 A. L. R. 745; Nann v. Raimist, 255 N. Y. 307, 174 N. E. 690, 73 A. L. R. 669; Crouch v. Central Labor Council, 134 Or. 612, 293 P. 729, 83 A. L. R. 193, and annotations. An interesting case of close application to the one at bar because it involved the picketing of a motion picture theater, and because it treats of the subject with some fullness, is United Chain Theatres v. Philadelphia, M. P. M. O. Union (D. C.) 50 F. (2d) 189.

While the defendants denied that they had done or were doing anything except such as could be regarded as peaceable picketing, there is substantial evidence to show that they had gone beyond that limit. Therefore

the plaintiffs were entitled to an injunction restraining the defendants from using those tactics of annoyance, intimidation, coercion, and misrepresentation.

The judgment is reversed, with directions to issue an injunction to that extent.

Whole court sitting.