**MORRIS d.b.a. CENTRAL MARKET & DAIRY v RETAIL CLERKS INT. PROTECTIVE ASS'N.**

Common Pleas Court, Trumbull Co.

No. 45055. Decided Feb. 24, 1940.

Spain & Spain, Warren, for plaintiff.
Boyle, Boyle & Conner, Warren, for defendants.

**OPINION**

By McVICKER, J.

This cause comes before this court upon a motion for a temporary restraining order.

The plaintiff is the owner of the Central Market & Dairy and is engaged in the business of retailing groceries, meats and dairy products. The defendants are the Retail Clerks International Protective Association, Local 450, affiliated with the American Federation of Labor, Lester Griffin, president of Local No. 450, and Joseph McDonald organizer and agent of the Retail Clerks International Protective Association. In February of 1937, the Retail Clerks International Protective Association secured the agreement of the majority of the proprietors of grocery and meat stores in Warren to observe uniform closing hours and keep their stores closed Wednesday afternoons, evenings after 6:00 o'clock, all day Sunday and

holidays. There is some dispute as to the number of stores participating in the agreement, but the number is something less than one hundred. At the time the agreement was signed by plaintiff, he was operating a grocery and meat store at his present location under the name of Central Market. He observed the uniform closing hours until May, 1938, when he opened a dairy products department in his store and changed the name to Central Market & Dairy. When plaintiff opened the dairy products department, he ceased to observe the uniform closing hours provided for in the agreement and has since operated his store Wednesday afternoons, evenings, Sundays and holidays. In October, 1939, a committee representing the defendant's union called upon the plaintiff and requested him to observe the uniform closing hours provided for in the agreement signed by plaintiff in February, 1937. Upon his refusal to accede to their request, defendants placed a picket in front of plaintiff's store. At the time of filing of the petition in this case, the picket carried a placard or banner bearing the words "Unfair to Organized Labor. Local 450. Affiliated A.F. of L."

Under these facts the court is called upon to determine whether the placing of the picket by the defendant is an invasion of the legal rights of the plaintiff and whether such picketing should be enjoined by the court.

The courts of this state have long upheld the right of organized labor to peaceable picketing in conjunction with a trade dispute. If a trade dispute exists, members of a labor union have the right to attempt to divert patronage from the business organization with which it has the controversy if the attempt is made by lawful means. Peaceable picketing, bannering and persuasion have all been held lawful means, if carried out without being accompanied by violence, abuse, intimidation, coercion or duress.

The first question to determine is whether the evidence in this case discloses the existence of a valid trade or labor dispute. The members of the R.C. A. have secured the consent of the proprietors of nearly a hundred food and meat stores in the city of Warren to observe uniform closing hours. They agreed to close their stores at 6:00 o'clock in the evening, all of Wednesday afternoon, Sundays and holidays, thereby materially improving the working conditions and hours. This has given both employees and employers greater leisure time and rest from their labors. The plaintiff agreed to observe the uniform closing hours and signed the petition circulated by the Retail Clerks Association. The plaintiff did observe such uniform closing hours until May, 1938, but since that time has operated his store after six o'clock in the evenings, Sundays and holidays. Plaintiff claims the right to ignore closing hours agreed upon by the merchants signing the petition on the ground that in May 1938 he reorganized his store and added a dairy department and changed the name to Central Market and Dairy. The court is of the opinion that such reorganization does not change the situation because the plaintiff is still the owner and operates the grocery and meat department contrary to the terms he agreed upon when he signed the petition. There would be some basis for his claims if he claimed the right to sell dairy products only outside of the uniform closing hours for the dairy department was added after he signed the petition and it was not contemplated by any of the parties to the agreement that dairy products sales would be covered by the agreement. Moreover, the defendants to this action have not questioned plaintiff's right to sell strictly dairy products outside of the uniform closing hours observed by the other meat and grocery stores.

If defendants raised no objection to plaintiff's operations of his meat and grocery store in violation of the agreement signed by plaintiff and the majority of all meat and grocery stores in the city of Warren, it is probable that in time many of the proprietors of the stores now observing the uniform closing hours would be compelled to meet

plaintiff's competition by likewise disregarding the uniform closing hours. The result would take away from their employees, members of defendant's union, the benefits of the shorter hours and more leisure which they enjoy under the terms of the agreement for uniform closing hours. Faced with that situation, the defendant union must stand idly by and watch the foundation upon which they have built favorable working conditions crumble unless the situation which threatens to bring on that condition constitutes a trade dispute.

The court is of the opinion that the situation presented by the evidence constitutes a legitimate trade dispute. In arriving at that opinion, the court follows the decision of Judge Griffith, in **Wiley et v Retail Clerks Union et, Vol. 32 N.P. (N.S.) page 257.** In that case the court said,

"This is a legitimate labor dispute, wherein the clerks' and meat cutters' organizations have gone on record, adopting this responsibility of closing on Wednesday afternoons. The plaintiffs having determined not to cooperate with the policy of the unions, but to operate their store and hold the same open for business on Wednesday afternoons, have no right to expect the union organizations' business and support, nor have they any right to prevent a lawful publicity of their refusal in this matter."

See also 204 N. Y. Supp. 845.

In that case the court held that the ultimate fact to be determined is whether the primary purpose of the acts complained of is to better the conditions of the boycotters as laborers, in which case the boycott would be lawful.

See also **Clark Lunch Co. v Waiters Local, 22 Oh Ap 265.**

It is contended by plaintiffs that a legitimate trade dispute can not exist in the absence of a controversy between the employer and his employees. The court does not agree with this interpretation of the law and finds support of

its view in the decisions in the following cases.

Hann v Raimist (N. Y.) 174 N. E. 690; Stillwell Theater Co. v Kaplan (N. Y.) 182 N. E. 63; Steffes v Motion Picture Operators, 161 N. W. 524; Kirnise v Adler (Pa.) 166 Atl. 566; Lindsay & Co. v Montana Fed. of Labor, 96 Pac. 127; Music Hall Theater v Moving Picture etc. Local (Ky.) 61 S. W. (2nd) 283; **Wiley et v Retail Clerks Union et;** Trumbull County Court of Common Pleas (Lynn B. Griffith, Judge) 32 N. P. (N.S.) 257; **Clark Lunch Co. v Waiters Local, 22 Oh Ap 265;** Blummer v Portland Moving Picture Machine Operators (Oregon) 17 Pac. (2nd) 1115.

In the Oregon case the Supreme Court held:

"This right of presenting its side of a controversy organized labor may exercise by lawful means, in a lawful manner when its members have reasonable grounds to apprehend that the practices or pay of any employer will produce an injurious effect on the working conditions of employees generally, or of those in a particular trade or calling, even though there may be no direct controversy between the employer and his immediate employees."

The right of organized labor to peaceable picketing in conjunction with a valid labor or trade dispute has been established through numerous decisions by the courts of our state. Two well known decisions are **La France Co. v Electric Workers, 108 Oh St 61,** and **The S. A. Clark Lunch Co. v The Cleveland Waiters Local, 22 Oh Ap 265.**

In the instant case the plaintiff had two alternatives to choose between in the operation of his store; either to conform to the uniform closing hours agreed upon between the Defendant Retail Clerks Association and the majority of the food store merchants including plaintiff, or to disregard the uniform closing hours and keep his store open Wednesday afternoons, evenings, Sundays and holidays. He chose to disregard the uniform closing hours and can not now complain if the defendant advertised that fact. He has no vested claim to the patronage of those whose

interests are adversely affected by his actions, nor does he have any vested right to the patronage of any class of persons. or any person, who knowing of the situation does not wish to give him this business. On the other hand, the defendants by reason of their obligation to the union members who are benefitted by the favorable uniform closing hours, and for the protection of the union generally in their struggle to maintain favorable working hours and working conditions have a legal right in a lawful way to influence the patronage of their members and friends in favor of those merchants who are cooperating with the union by observing the uniform closing hours. The patronage of the members of the union and those in sympathy with them is an asset which they have a legal right to use for the benefit of their organizations.

The court finds that the picketing complained of has been carried on without violence, abuse, intimidation or coercion.

This action was dismissed by the court as to the defendants The Truck Drivers Union and Jacob Shattuck business agent for the Truck Drivers Union at the conclusion of plaintiff's evidence, for the reason that the evidence failed to show a conspiracy between the Retail Clerks Union and The Truck Drivers Union and Jacob Shattuck, or any illegal actions on the part of the defendants so dismissed.

The evidence discloses that the union truck drivers for a number of the wholesale houses supplying plaintiff with groceries and meats refused to make deliveries to plaintiff's store because of the controversy between plaintiff and defendants. This court recognizes the right of these union truck drivers to refuse to go through a picket line to make deliveries and subject themselves to discipline at the hands of their own union. Our own Court of Appeals in the case of **Temple McAllister v Trumbull County Building Trades Council et**, decided Sept. 15, 1939, held that the rule adopted by Truck Drivers Union, penalizing its members for driving through picket lines is not against public policy so long as it is confined to exacting penalty from its members for violation thereof.

The evidence further discloses that the defendant, Joseph McDonald, an organizer, did attempt to prevent delivery of supplies to the plaintiff by means of intimidation and coercion, in that he threatened to cause loss of business to wholesale houses supplying plaintiff. He will be enjoined from attempting to prevent delivery of supplies in the future by the use of threats, intimidation or coercion.

For the reasons given the court holds that the court should not issue a temporary restraining order restraining the defendants, The Retail Clerks International Protective Association Local No. 450, and Lester Griffin, as prayed for in plaintiff's petition, and therefore denies the prayer for same.