Zimmerman, J.,
 

 dissenting. From a reading of the majority opinion, this case would appear to be wholly one-sided. However, such is not the fact and the writer believes the position of the defendants, supported by ample and respectable authority, is entitled to expression.
 

 Having had a strict injunction issued against them in the Court of Common Pleas forbidding any “picketing,” the defendants appealed the cause on questions of law and fact to the Court of Appeals.
 

 The higher court heard the controversy
 
 de novo,
 
 but substantially on the record as made in the court of first instance. The matter was presented to Judges Hamilton, Ross and Matthews of the First Appellate District, sitting by designation in the Eighth Appellate District.
 

 By unanimous action the court found that Mrs. Pearl E. Crosby operates a restaurant in the city of Cleveland, and does not employ union labor; that her employees are under contract for specified terms of employment and do not desire to become unionized, and that the defendant unions have the right to notify
 
 *358
 
 the public that Mrs. Crosby does not employ union labor.
 

 Apparently following the principles enunciated in the case of
 
 S. A. Clark Lunch Co.
 
 v.
 
 Cleveland Waiters & Beverage Dispensers Local,
 
 22 Ohio App., 265, 154 N. E., 362, it was “ordered, decreed and adjudged,” subject to the limitations of laws or ordinances as to the 'use of streets and sidewalks, that the defendant unions might maintain two moving representatives near the front of the restaurant and one at the rear entrance for the sole purpose of informing the public orally, or by handbills and signs, that Mrs. Crosby does not employ union help, and to request that the restaurant be not patronized for that reason; such activities to be conducted in a quiet, orderly fashion, and so as not to interfere with any person desiring to enter or leave the restaurant for any purpose.
 

 The defendants, and those having notice of the order, were enjoined from molesting, interfering with, or annoying Mrs. Crosby and her employees in any manner.
 

 Was such decree reasonable, proper and lawful? A majority of this court holds in effect it was not, adopting the attitude that “peaceful picketing” is only authorized when a
 
 bona fide-
 
 trade or labor dispute exists directly between an employer and his employees, as concerns wages, hours, working conditions, etc. Supporting this conclusion, reliance is placed on the ease of
 
 La France Electrical Construction & Supply Co.
 
 v.
 
 International Brotherhood of Electrical Workers,
 
 108 Ohio St., 61, 140 N. E., 899.
 

 With due deference for the opinion of his associates, the writer of this dissent submits that the general view taken by the majority is too narrow, and that the
 
 La France case,
 
 upon its facts, is not authority for the proposition that “peaceful picketing” may be resorted to only in the event of a strike.
 

 Acts of violence perpetrated against Mrs. Crosby,
 
 *359
 
 her employees and customers are mentioned in the majority opinion. It is to be borne in mind that these occurred prior to the issuance of the injunction by the Court of Common Pleas, that the defendants disclaim responsibility therefor, and that there is a lack of evidence implicating them.
 

 Be that as it may, such conduct, by whomsoever carried on, cannot be defended, condoned or sanctioned.
 

 Responsible labor leaders realize that the pursuit o'f illegal methods to bring about what may be a desirable result is harmful to the labor movement as a whole, and arouses public opinion against the cause of organized labor.
 

 However, we are not here concerned with the past. Our primary function is to determine whether the order of the Court of Appeals for the future should remain undisturbed.
 
 J. H. & S. Theatres, Inc.,
 
 v.
 
 Fay,
 
 260 N. Y., 315, 320, 183 N. E., 509, 511. Or, as it was put in
 
 Fenske Bros., Inc.,
 
 v.
 
 Upholsterers International Union,
 
 358 Ill., 239, 260, 193 N. E., 112, 121, 97 A. L. R., 1318, 1333: “The mere fact that acts of violence had been previously committed would of itself furnish no justification for enjoining legal acts of peaceable persuasion. ’ ’
 

 No one will seriously deny that organized labor has done as much if not more than any other single agency to improve the lot of working people as a class. Increased wages, shorter hours, better working conditions and a higher standard of living can be ascribed in an important degree to its activities and influence. The struggle has been long and arduous, and the continued existence of labor organizations as effective bodies is dependent upon progress.
 

 While, of course, no employer can be compelled to hire union workmen, and no workman can be forced to join a labor union, organized labor should have the privilege, in a reasonable, peaceable and orderly way, of advising the public, if it so desires and for what it
 
 *360
 
 may be worth, of the truth concerning an employer of labor, especially where the practices followed and the policies pursued by such employer are opposed to the interests of union labor, and are considered deleterious to employees generally, or to employees engaged in a particular kind of work. The defendants strongly urge that such is the situation as concerns the Crosby restaurant, and testimony in the record is pointed out as supporting the contention.
 

 Irrespective of special legislation on the subject of which there is none in Ohio, the term “trade dispute,” or “labor dispute,” according to the liberal judicial concept, has a broader and more comprehensive meaning than the one given it by the majority of this court.
 

 Such concept is exemplified in the leading case of
 
 Exchange Bakery & Restaurant, Inc.,
 
 v.
 
 Rifkin,
 
 245 N. Y., 260, 263, 157 N. E., 130, 132, where the court said:
 

 “The purpose of a labor union to improve the conditions under which its members do their work; to increase their wages; to assist them in other ways may justify what would otherwise be - a wrong. So would an effort to increase its numbers and to unionize an entire trade or business. It may be as interested in the wages of those not. members, or in the conditions under which they work as in its own members because of the influence of one upon the other. All engaged in a trade are affected by the prevailing rate of wages. All, by the principle of collective bargaining. Economic organization today is not based on the single shop. Unions believe that wages may be increased, collective bargaining maintained only if union conditions prevail, not in some single factory but generally. That they may prevail it may call a strike and picket the premises of an employer with the intent of inducing him to employ only union labor. And it may adopt either method separately. Picketing without a strike is no more unlawful than a strike without picket
 
 *361
 
 ing. Both are based upon a lawful purpose. Resulting injury is incidental and must be endured.”
 

 Again, in
 
 Blumauer
 
 v.
 
 Portland Moving Picture Machine Operators’ Protective Union,
 
 141 Ore., 399, 403, 17 P. (2d), 1115, 1116, it was remarked:
 

 ‘ ‘ Organized labor has the right to present its side of a controversy to the public by all lawful means if such means may be, and are, used in a lawful manner without violence, or threats, or intimidation of the employer, his employees, or the patrons of the employer’s business. * * #
 

 “This right of presenting its side of a controversy, organized labor may exercise by lawful means, in a lawful manner when its members have reasonable grounds to apprehend that the practices or pay of any employer will produce an injurious effect on the working conditions of employees generally, or of those in a particular trade or calling, even though there may be no direct controversy between the employer and his immediate employees.”
 

 In the later case of
 
 Geo. B. Wallace Co.
 
 v.
 
 International Association of Mechanics,
 
 155 Ore., 652, 664, 63 P. (2d), 1090, 1095, the same court observed:
 

 “Without any attempt to reconcile all that has been said on the subject, we think the better reasoned cases áre to the effect that a strike and picketing are not necessarily concomitant. There may be a strike without picketing and picketing without a strike. Bach is a combative weapon which labor may use to accomplish its objectives if the same be lawful.”
 

 And in
 
 Music Hall Theatre
 
 v.
 
 Moving Picture Machine Operators,
 
 249 Ky., 639, 642, 61 S. W. (2d), 283, 285, this language appears:
 

 “The law recognizes the right of peaceful picketing. Although that term is sometimes criticised as a contradictory one, since the word ‘picketing’ is taken from the nomenclature of warfare and is strongly suggestive of a hostile attitude, it has acquired a significance and
 
 *362
 
 meaning commonly understood. It connotes peaceable methods' of presenting a cause to the public in the vicinity of the employer’s premises. Labor has the recognized legal right to acquaint the public with the facts which- it regards as unfair, to give notoriety to its cause, and to use persuasive inducements to bring its own policies to triumph.”
 

 A number of courts, in the absence of enactments like the Norris-LaGfuardia Act (29 U. S. Code, Section 101
 
 et seq.),
 
 and where no controversy has existed between an employer and his immediate employees, have held “peaceful picketing” lawful, when its avowed design and purpose is to benefit organized labor directly or indirectly. Some of the representative cases are:
 
 United Chain Theatres, Inc.,
 
 v.
 
 Phila. Moving Picture Machine Operators Union
 
 (D. C., Pa.), 50 F. (2d), 189;
 
 Steffes
 
 v.
 
 Motion Picture Machine Operators Union,
 
 136 Minn., 200, 161 N. W., 524;
 
 Empire Theater Co.
 
 v.
 
 Cloke,
 
 53 Mont., 183, 163 P., 107, L. R. A. 1917E, 383;
 
 Bomes
 
 v.
 
 Providence Local No. 223 of Motion Picture Operators,
 
 51 R. I., 499, 155 A., 581;
 
 Nann
 
 v.
 
 Raimist,
 
 255 N. Y., 307, 314, 174 N. E., 690, 73 A. L. R., 669, 674. Compare
 
 People
 
 v.
 
 Harris,
 
 104 Colo., 386, 91 P. (2d), 989, 122 A. L. R., 1034;
 
 Scofes
 
 v.
 
 Helmar,
 
 205 Ind., 596, 187 N. E., 662;
 
 Kirmse
 
 v.
 
 Adler,
 
 311 Pa., 78, 166 A., 566.
 

 In
 
 American Furniture Co.
 
 v. I.
 
 B. of T. C. & H. of A. Chauffeurs, etc., Local, Teamsters & Helpers General Local,
 
 222 Wis., 338, 359, 268 N.
 
 W.,
 
 250, 260, 106 A. L. R., 335, 348, the court confidently stated that the proponents of the
 
 Norris-LaGuardia Act
 
 intended to enact into law the views expressed in
 
 Exchange Bakery & Restaurant
 
 v.
 
 Rifkin, supra
 
 (245 N. Y., 260, 263, 157 N. E., 130, 132).
 

 Under language as used in such act (29 U. S. Code, Section 113 [a] and [c]), it has been expressly held that a “labor dispute,” permitting “peaceful picketing” • adjacent to an employer’s establishment, may exist, even though none of the employees are union
 
 *363
 
 members, and there is no altercation between the employer and his employees.
 
 Senn
 
 v.
 
 Tile Layers Protective Union,
 
 222 Wis., 383, 268 N. W., 270, affirmed 301 U. S., 468, 81 L. Ed., 1229, 57 S. Ct., 857;
 
 Lauf
 
 v.
 
 E. G. Skinner & Co.,
 
 303 U. S., 323, 82 L. Ed., 872, 58 S. Ct., 578;
 
 New Negro Alliance
 
 v.
 
 Sanitary Grocery Co.,
 
 303 U. S., 552, 82 L. Ed., 1012, 58 S. Ct., 703;
 
 L. L. Coryell & Son
 
 v.
 
 Petroleum Workers Union
 
 (D. C., Minn.), 19 F. Snpp., 749.
 

 The opinion has also been advanced that an injunction denying the members of a labor union the right to apprise the public of the true facts in relation to an employer of labor by means of “peaceful picketing,” reasonably exercised on a defensible basis, would constitute an infringement of the constitutional guaranty of free speech.
 
 Senn
 
 v.
 
 Tile Layers Protective Union, supra
 
 (301 U. S., 468, 478, 81 L. Ed., 1229, 1236, 57 S. Ct., 857);
 
 People
 
 v.
 
 Harris, supra
 
 (104 Colo., 386, 394, 91 P. [2d], 989, 993). Compare,
 
 Schneider
 
 v.
 
 State of New Jersey (Town of Irvington), etc.,
 
 307 U. S., ...., 84 L. Ed., ...., 60 S. Ct., 146.
 

 While Mrs. Crosby declares she is not antagonistic toward union labor and has no objection to her employees becoming union members, the record contains instances tending to belie such statements. Particular reference is made to the reaction initially displayed to the suggestion of unionization and the tactics subsequently adopted; to the treatment of a union waitress working for a time at the Crosby restaurant, and to the development when a union organizer attempted to approach the restaurant cooks, who had evinced a friendliness to his overtures.
 

 Furthermore, the representations of the defendants and the conclusion of the Court of Appeals as to the object of the “peaceful picketing” cannot be ignored. If it were clear that the dominant motive was to ruin Mrs. Crosby’s business from a purely evil incentive rather than to promote the interests of union labor, a
 
 *364
 
 different attitude would be in order, for “when the purpose of picketing is to injure or destroy a business rather than to further the common interests of the worker, it is an unlawful interference with the property rights of the employer and should be enjoined.”
 
 Geo. B. Wallace & Co.
 
 v.
 
 International Association of Mechanics, supra
 
 (155 Ore., 652, 664, 63 P. [2d], 1090, 1095).
 

 Therefore, it is finally submitted that the judgment of the Court of Appeals is justifiable and should be affirmed.