**UNITED CONST. WORKERS et al.**

**v.**

**NEW BURNSIDE VENEER CO., Inc.**

Court of Appeals of Kentucky.

June 4, 1954.

Rehearing Denied, Former Opinion
Withdrawn and Redelivered
Feb. 18, 1955.

William A. Young, Frankfort, Lay & Knuckles, Pineville, for appellants.

Fritz Krueger, Sam C. Kennedy, Somerset, for appellee.

CLAY, Commissioner.

Appellee recovered a judgment of $75,000 against appellant labor union and certain of its representatives. The basis of appellee's claim was that the wrongful acts of appellants forced it to close its plant, with resultant damages.

Appellee was engaged in the manufacture of wood veneer products near Tateville, having moved its plant from East Burnside in 1950. On March 12, 1952, appellee was notified that a majority of its employees were members of appellant union and an attempt was made by the latter to negotiate a contract. Appellee refused to recognize the union and thereupon a strike was called.

Between March 18 and June 2, 1952, the plant was closed down because of the strike. An unsuccessful attempt to reopen it was made on the latter date. On June 6 appellee obtained a temporary injunction limiting the number of pickets and enjoining the use of force, violence or coercive tactics on the part of the union or its representatives. This order was agreed to by appellants. On June 12 this suit was filed and appellee has since dismantled its plant and gone out of business.

The fundamental issues in the action, submitted to a jury, were whether or not appellants conspired to intimidate, alarm and injure appellee and its employees for the purpose of preventing appellee from operating its plant, and as a proximate result thereof it was forced out of business. Appellants' contentions on this appeal will be taken up seriatim:

1. Appellants first contend they were entitled to a directed verdict because (a) there was a failure to prove any wrongful acts on their part, (b) if there were wrongful acts they were not the proximate cause of appellee's discontinuance of business, and (c) there was no competent proof of damage.

We believe there was ample evidence to justify a jury's finding that many acts committed on behalf of the union went well beyond the scope of peaceful picketing and persuasion. It was shown that several persons had been stopped by representatives of the union when going to and from the plant; persons were advised not to enter the plant; there were threats and suggestions that there would be trouble or that persons would be hurt if they attempted to go on the company property or to operate the plant; there were threats of shooting and threats of importing outsiders to make the strike effective, and also threats that a power line would be cut.

In addition to the verbal acts of union representatives, it was also shown that persons unknown had fired at or near the plant; that the boilers had been on one occasion surreptitiously drained; that the house of a managerial employee had been "rocked"; and that the boiler room of the plant had been set on fire the evening before it had been planned to re-open operations.

Appellants, while conceding that certain intemperate statements may have been made by representatives of the union, con-

tend that the acts committed were not wrongful, principally because no one was actually hurt and no substantial damage was done. It is also contended that the persons committing some of the acts above mentioned were not identified as union representatives.

■ It is not necessary in establishing the use of unlawful force to prove that persons were injured or property destroyed. See Underhill v. Murphy, 1904, 117 Ky. 640, 78 S.W. 482. Persons may be intimidated without being physically harmed and threats may effectively deter persons from engaging in their normal activities. Intimidation or coercion is as wrongful as the use of force and violence. Music Hall Theatre v. Moving Picture Machine Operators Local No. 165, 249 Ky. 639, 61 S.W.2d 283. Certainly the jury could conclude from the proven acts and the chain of closely related circumstances that appellant union and its members were engaging in an unlawful course of conduct designed to prevent the operation of the plant until the demands of the union were met. See 31 Am.Jur., Labor, Sections 185, 186.

In view of the testimony of the company's president that a substantial number of striking employees had expressed their willingness to work, and in view of the acts discussed above, the jury would likewise be justified in finding that appellants' conduct was the proximate cause of appellee's decision permanently to close its plant.

■ With respect to damages, there was substantial evidence the plant had a going value of between $250,000 and $300,000 and that business in the past had been successful. In addition, appellee's president had, shortly before the strike commenced, negotiated a very profitable contract for the sale of its entire production for one year to a single customer. The physical plant, which appellee has been selling piecemeal, had relatively little value compared to that of the company as a going concern. We believe the uncontradicted and competent evidence of valua-

tion was sufficient to justify the jury verdict.

■ 2. Appellants next contend the instruction with respect to the measure of damages given by the court was erroneous. This instruction was to the effect that if the jury believed as a direct and proximate result of the acts of the appellants appellee's business enterprise was injured and damaged to the extent it was destroyed, then the jury could award appellee the difference between the fair market value of the plant immediately before and immediately after the acts complained of. Appellant takes the position that this instruction assumes appellee's business was destroyed and that recovery should have been limited to such temporary damage as may have been caused. Obviously the instruction does not assume the destruction of appellee's business by appellants because it very clearly and fairly presents that precise question to the jury. If it so believed, the measure of damages was the same as in the case of destruction of other property. The issue of temporary damage was not developed in the proof and appellants did not offer an instruction on that theory.

■ 3. It is next contended the court should have discharged the jury because the question of Communism was improperly injected into the case. Appellee's president was asked why he decided not to sign a contract with appellant union. In substance he testified that he had made inquiry of the National Labor Relations Board and had received a telegram to the effect that the officers of this union had not taken the non-Communist oath required under the Taft-Hartley law. During the questioning of the witness on this point there was quite a colloquy between counsel with respect to the introduction of the telegram. It was, however, excluded by the court, and the court stated to the jury the legal effect of the failure on the part of the union officials to take the oath.

We do not find the admitted testimony incompetent. Whether the facts learned by appellee's president were true or not is

immaterial, but he clearly had a right to explain what motivated his actions resulting in the controversy between the parties. He could explain his position just as representatives of the union could explain theirs. As a matter of fact, appellants make a vigorous argument that appellee wrongfully refused to negotiate with the union. In view of such a charge, certainly appellee's president could give his reasons for such action, and the reference to Communism was a necessary and proper incident of his explanation.

4. It is next contended the court improperly refused to permit a number of union representatives to testify concerning the instructions given to the striking union members with respect to their conduct while picketing. Moon, an official of the union, was asked what he told other members with respect to how they should conduct themselves on the picket line.

Over objection of appellee he was permitted to testify: "I told them to hold a peaceful picket line." When an objection was sustained to a subsequent question directed to this witness, by way of avowal he said the instructions were that there "should be no violence at any time and nothing destroyed and to carry it all peacefully". It may be noted that this avowal was totally unrelated to the question to which an objection was sustained. Another union official, Davis, was asked a leading question with respect to what he told the union pickets about acting peacefully and not in violation of the law. He answered before an objection was sustained.

■ A rather close question is presented with respect to the competency of the above testimony. It consists of what has been generally excluded as "self-serving" declarations. See 20 Am.Jur., Evidence, Section 558. On the other hand, the "self-serving" objection has been vigorously criticized. Wigmore on Evidence, (3rd. Ed.), Volume 6, Section 1732. Assuming all of this evidence competent as showing intent or purpose or motive, we find it was substantially presented to the jury even though a repetition of similar testimony was excluded. No reversible error is apparent.

■ Some of the union representatives were asked what instructions were given by the above two witnesses and objections were sustained to those questions. This was hearsay testimony and objectional as such. Even were it competent, there must be some limit to repetitious statements concerning what was really a collateral issue. The controversy concerns the acts of the union representatives, not what they heard by way of instructions. We find no error affecting the substantial rights of appellants with respect to these rulings.

■ 5. Appellants next contend appellee had no cause of action because it violated the rights of the union in refusing to negotiate with it. While it may have been an unfair labor practice under the Taft-Hartley law, 29 U.S.C.A. § 151 et seq., to refuse to negotiate, appellants did not invoke this law, and as a matter of fact, were not in a position to do so. Even if appellee was at fault in this respect, it certainly would not justify appellants in resorting to unlawful acts of intimidation, coercion or force. See 31 Am.Jur., Labor, Section 240.

6. It is finally contended appellee's counsel made highly prejudicial arguments to the jury. The first allegedly objectional statement was to the effect that appellee's president had received a telegram from the National Labor Relations Board stating that the officials of appellant union had refused to take the "anti-Communist" oath. As we have discussed above (3.), it was proper to explain why appellee refused to negotiate a contract with appellant union. While the court had not permitted the introduction of the telegram in evidence, its existence and import had properly been made known to the jury. The single reference to the telegram was, therefore not improper argument.

Three other statements made in appellee's closing argument were objected to. The court sustained objections to two of

them and the third, though irrelevant, was invited by the closing argument for appellants. We find no reversible error here.

A careful examination of this record convinces us that appellants were accorded a fair trial before a jury.

The judgment is affirmed.

Judge Hogg not sitting.